SENMED, INC. and Ethicon, Inc.,
Plaintiffs–Appellees,

v.

RICHARD–ALLAN MEDICAL INDUS-
TRIES, INC., Defendant–Appellant.

No. 89–1091.

United States Court of Appeals,
Federal Circuit.

Oct. 18, 1989.

Rehearing Denied Nov. 14, 1989.

Suggestion for Rehearing In Banc
Declined Jan. 4, 1990.

David E. Schmit, Frost & Jacobs, Cincin-
nati, Ohio, argued, for plaintiffs-appellees.

With him on the brief was Roger A. Gilcrest.

Theodore W. Anderson, Neuman, Williams, Anderson & Olson, Chicago, Ill., argued, for defendant-appellant. With him on the brief was Todd P. Blakely.

Before MARKEY, Chief Judge, NEWMAN and ARCHER, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment entered by the United States District Court for the Western District of Michigan, No. K 84–444, on a jury verdict that Richard–Allan Medical Industries, Inc. (Richard–Allan) failed to establish invalidity of U.S. Patent No. 4,109,844 ('844) and that Senmed, Inc. and Ethicon, Inc. (collectively Senmed) proved Richard–Allan's willful infringement of that patent. We vacate in respect of validity and reverse in respect of infringement.

## BACKGROUND

The claimed and accused devices are surgical staplers (skin staplers) that apply staples to close incisions or wounds. Unlike paper or stationery staplers, to which they are kin, skin staplers locate the staple-deforming anvil above the material to be stapled and deform the staple into a "box" shape rather than a tightly clenched configuration. Skin staples extend through the edges of skin tissue but remain open and able to flex when the tissue swells. To facilitate removal, the top of the staple is spaced slightly above the skin.

At trial, inventor Becht testified that, attributing unreliability of existing staplers to unnecessary complexity, he set forth to design a simpler device and focused on an area he considered the most complex, i.e., "the interface between where the staples are fed and where the staples were formed."

Becht's effort led to the '844 patent. Claim 1 reads:

A surgical stapling instrument for forming and implanting a staple in skin or fascia of a patient, said instrument comprising a handle portion incorporating a nose portion, said nose portion having an anvil plate at the bottom end thereof, said anvil plate terminating at its forward end in a coextensive anvil surface, said anvil plate being adapted to slidably mount a row of staples, means to constantly urge and advance said row of staples along said anvil plate to place a forwardmost staple on said anvil surface, a staple driver mounted in said nose portion and shiftable vertically between a normal upper position closely adjacent said forwardmost staple on said anvil surface and a lower position wherein it forms and implants said forwardmost staple about said anvil surface, and means to shift said staple driver between said upper and lower position thereof.[1]

## The Proceedings

On October 14, 1984, Senmed sued Richard–Allan, alleging, inter alia, infringement of the '844 patent. Following an exhaustive six-week trial, the jury returned a verdict in the form of answers to questions on anticipation, obviousness, infringement, and willfulness:[2]

1. Do you unanimously find that the defendant Richard–Allan has proved by clear and convincing evidence that either of the asserted claims of the Becht 844 Patent is invalid because such claim was anticipated by a single prior art reference which disclosed each and every element of a claim arranged as in such claim?

[jury answer] Claim 1, no. Claim 2, no.

2. Do you unanimously find that the defendant Richard–Allan has proved by clear and convincing evidence that any of the asserted claims of the Becht 844 Patent is invalid because the differences between such claims and the pertinent prior art were such that the subject matter of

---

1. Dependent claim 2 was also in suit, but, apparently agreeing that it stands or falls with claim 1, the parties do not discuss it and neither, accordingly, do we.

2. The questions and the jury's answers were read into the record. The appendix before us does not contain the written verdict form which the trial judge said he would show the parties.

the claim as a whole would have been obvious to a person having ordinary skill in the pertinent art at the time of the invention?

[jury answer] Claim 1, no. Claim 2, no.

3. Do you unanimously find that the defendant Richard–Allan has infringed upon any of the asserted claims of the Becht 844 Patent?

[jury answer] Claim 1, yes. Claim 2, yes.

4. If you find the Becht 844 Patent infringed, do you unanimously find by clear and convincing evidence that Richard–Allan willfully infringed upon the Becht 844 Patent?

[jury answer] Yes.[3]

Richard–Allan moved for judgment NOV and for a new trial. Supplying a comprehensive opinion, the trial judge denied the motions and entered judgment in accord with the jury answers that constituted the verdict.

In his well written opinion, the trial judge discussed the evidence and Richard–Allan's arguments in relation to literal infringement, infringement under the doctrine of equivalents, anticipation, obviousness, willful infringement, jury instructions, and an evidentiary ruling. The court noted that the credibility of Richard–Allan's sole witness on anticipatory art could "reasonably be questioned." Thrice noting that Richard–Allan "provided no testimony from an expert with ordinary skill in the art of skin stapling," the court adopted inventor Becht's claim-interpreting testimony in upholding jury answer 3 on infringement.

Richard–Allan here contends that certain of the jury's answers are unsupportable and that the trial judge therefore erred in refusing to enter judgment NOV. Admirably, it does not burden this court with challenges on the denial of its motion for a new trial, the correctness of any jury instruction, jury answer 1 (anticipation), or jury answer 4 (willfulness), but limits its appeal to jury answer 2 (obviousness) and jury answer 3 (infringement).

## ISSUE

Whether the judgment entered on the jury verdict of infringement can be sustained in law.

## OPINION

### Introduction

■ To succeed here, Richard–Allan must show that the jury's finding of infringement is not supported by substantial evidence or that it was made in relation to a claim interpretation that cannot in law be sustained. *See ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1581–82, 6 USPQ2d 1557, 1561–61 (Fed.Cir.1988). After careful review of the record, we are convinced that Richard–Allan satisfied the latter criterion. We must, therefore, reverse the judgment entered on the jury verdict of infringement.[4]

Richard–Allan says the "jury and the district court misconstrued the scope of claim 1" and that the claim, "properly construed," cannot be read on its device. It argues that the claim limitation "means to constantly urge and advance said row of staples along said anvil plate to place a forwardmost staple on said anvil surface" cannot be read on its device because its advancing means places a forwardmost staple above its anvil. Stated differently,

---

3. Richard–Allan labels the jury's answers a "general verdict." The trial judge and the parties elected not to ask the jury for a true general verdict (e.g., "We find for the plaintiff/defendant"), or for answers to detailed fact interrogatories under Rule 49(a), Fed.R.Civ.P., or for a combination of a general verdict and answers to fact interrogatories under Rule 49(b), Fed.R. Civ.P. *See Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1515–17, 220 USPQ 929, 938–39 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150, 224 USPQ 520 (1984). We must take the appeal as presented. That the parties view the verdict as the "equal of a general verdict" does not in itself require reversal or remand for retrial. *See id.* at 1515–16, 220 USPQ at 938.

4. In view of our decision on infringement, there is no longer a case or controversy on validity and the judgment entered on jury answers 1 and 2 will be vacated. *See Vieau v. Japax, Inc.*, 823 F.2d 1510, 3 USPQ2d 1094 (Fed.Cir.1987). Our decision on infringement also carries with it jury answer 4.

Richard–Allan says "on" the anvil surface must be interpreted as meaning "in physical contact with" the anvil surface.[5]

■ There was, at the pretrial, trial, and post-trial stages, an intense focus on claim interpretation. That an appellant's arguments had been ineptly presented to a trial court does not in itself preclude a reversal by this court if the record unequivocally establishes that the appealed judgment resulted from clear and reversible legal error. We cannot and will not, as Richard–Allan would have us do, substitute our view of facts, or re-try the case, or ignore all the events that occurred before the appeal. Construction of claim scope (claim interpretation), however, is a question of law for decision by the trial judge on motion for JNOV and by this court on appeal. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed.Cir.1989); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452, 227 USPQ 293, 295–96 (Fed.Cir. 1985); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 866, 228 USPQ 90, 93 (Fed.Cir. 1985); *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir.1983). That a jury has answered a legal question may not in itself require reversal. Of a certainty, however, that circumstance cannot serve to relieve the trial judge or this court of the judicial duty to insure that the law is correctly applied. That duty hangs heavy on an appellate court when, as here, it necessitates reversal after a six week trial and a denial of a motion for JNOV.[6]

### Claim Interpretation

■ In answering an infringement inquiry one must first interpret the claim. *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986). Once an interpretation has been made, that same interpretation must be employed in determining literal infringement and infringement under the doctrine of equivalents. *See Loctite*, 781 F.2d at 870–71, 228 USPQ at 96.[7] The claim here is interpreted in light of the probative facts in the record, i.e., all of the claim's language, the specification, and the prosecution history. *See Fromson*, 720 F.2d at 1569–71, 219 USPQ at 1140–42.

Here the jury returned a naked verdict stating the ultimate fact of infringement. That circumstance requires the district court, and this court on appeal, to presume not only the jury's claim interpretation but also the findings necessary to support that interpretation. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 767–68, 9 USPQ2d 1417, 1426 (Fed.Cir.1988). Whether the jury premised its infringement finding on a literal reading of the claim or on the doc-

---

**5.** Richard–Allan further cites the limitations "an anvil plate" and "said anvil plate terminating at its forward end in a coextensive anvil surface" and argues that, because "an" and "coextensive" mean the anvil plate must be an integral, one-piece structure, the limitation cannot be read on its two-piece structure. The trial judge rejected that interpretation, in view of Becht's claim-interpreting testimony. Because infringement is avoided when one element (or substitute falling within a permissible range of equivalents), is absent, we need not and therefore do not discuss the limitations drawn to the anvil plate.

**6.** We are, of course, fully aware of the principles eloquently set forth in the dissent, including those calling for deference to jury findings supported by substantial evidence and to acceptance of a jury's application of the law when such application is sustainable. As explicated, *infra*, acceptance of the jury's and the district court's application of the law of claim interpretation in this case would result in a patentee's recapturing what was forfeited in obtaining the patent, a result contrary to a fundamental underpinning of patent law. Such acceptance would not be mere "deference"; it would be blinded abdication of our appellate duty to uphold the law.

**7.** The same interpretation of a claim must be employed in determining all validity and infringement issues in a case. *See W.L. Gore & Assoc. v. Garlock, Inc.*, 842 F.2d 1275, 1279, 6 USPQ2d 1277, 1280 (Fed.Cir.1988).

Richard–Allan repeatedly argues an absence of "substantial evidence." One employs evidence to prove facts, not legal conclusions. The facts on which the claim interpretation must rest (e.g., claim language, specification, prosecution history) are here undisputed. Equally undisputed are the facts related to the Fishbein structure and operation. Hence a remand for application of the proper claim interpretation is unwarranted in this case.

trine of equivalents, the claim interpretation necessary to support a finding of infringement cannot in this case be supported by the record. The claim language, specification, and prosecution history belie the claim interpretation asserted by Becht, necessarily arrived at by the jury, and adopted by the district court.

In interpreting the claim language "on said anvil surface," the district court relied on Becht's testimony that the phrase means the staple is placed "between the upper surface of the anvil, the coextensive anvil surface, and the lower limit of whatever abutting means is above it" and on a dictionary definition of "on" ("a position of contact or juxtaposition"), adding that "[i]nsofar as Becht claims that on the anvil surface means juxtaposed to the anvil surface, Becht's testimony is consistent with the plain language of the claim." Citing Becht's testimony that manufacturing tolerances required a gap between the staple and the anvil, the district court concluded, "[t]hus there is substantial evidence for the jury's implied finding [sic, conclusion] that claim 1 of the Becht '844 patent does not require the forwardmost staple to be in physical contact with the anvil."[8]

The court said (in discussing its evidentiary ruling) the jury had been instructed that "a patentee may not adopt a position inconsistent with a position reflected in the prosecution history." In evaluating the jury's answer 3 on infringement, however, the court said nothing about whether the jury had complied with that instruction in arriving at its implied claim interpretation (from what appears below, the jury could not possibly have complied with that instruction). Nor did the court discuss the applicable claim language, the specification, or the prosecution history in an effort to arrive at its own claim interpretation as a matter of law. Those three parts of the record are undisputed and undisputable. They are also, as a matter of law, compelling and conclusive of the proper claim interpretation.

The claim language includes the limitation "closely adjacent said forwardmost staple" to specify the upper position of the staple driver. If Becht's litigation-induced testimony that "on" means "juxtaposed" be accepted, two terms clearly intended to have different meanings in the claim's context, "closely adjacent" and "on", would mean the same thing. This court condemned such semantic antics in *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1421–22, 7 USPQ2d 1158, 1160–61 (Fed.Cir.1988).

The specification thrice describes the relationship of the forwardmost staple with the anvil surface:

The forwardmost staple *rests upon* the anvil forming surface.

\*      \*      \*      \*      \*      \*

The forwardmost staple is located *on* the anvil forming surface of the anvil plate.

\*      \*      \*      \*      \*      \*

When the surgical stapling instrument of the present invention is in its normal position, there will always be a staple

---

**8.** Becht's testimony was a fatally weak reed on which to lean. "On" is clearly neither a technical term nor a word of art having special meaning to those skilled in the art such that expert testimony is required for its interpretation. *See Howes v. Medical Components, Inc.*, 814 F.2d 638, 643, 2 USPQ 1271, 1273 (Fed.Cir.1987). Lawyers may create a "dispute" about any word, but there is nothing ambiguous or linguistically obscure about "on" as used in the present claim. Where as here "on" was clearly given its ordinary meaning in the specification and prosecution history, Becht's self-serving, *post-hoc* opinion testimony on the legal question of whether it should have a different meaning was of little if any significance. *See Envirotech Corp. v. Al*

George, Inc., 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984) ("[w]ords in a claim 'will be given their ordinary and accustomed meaning, unless it appears that the inventor used them differently.'" (Citation omitted.)) Nothing of record indicates Becht used "on" differently until he got to court. Lastly, an inventor may not be heard to proffer an interpretation that would alter the undisputed public record (claim, specification, prosecution history) and treat the claim as a "nose of wax." *See White v. Dunbar*, 119 U.S. 47, 51–52, 7 S.Ct. 72, 74–75, 30 L.Ed. 303 (1886); *Townsend Eng'g. Co. v. HiTec Co.*, 829 F.2d 1086, 1089–90, 4 USPQ2d 1136, 1139 (Fed.Cir.1987).

located *upon* the anvil forming surface.[9] (Emphasis added.)

The prosecution history establishes that the examiner rejected the claim, citing Fishbein's United States Patent No. 3,873,016 as a reference, because Fishbein moved the forwardmost staple to a position above the anvil surface, from whence a staple driver moved it onto the anvil surface. At that time, Becht's claim called only for means for moving a row of staples "toward said anvil surface" a limitation reading directly on Fishbein. After an agreement between the examiner and Becht's attorney to indicate that the anvil surface, anvil plate, and driver are so related that the "driver does not move [the] staple prior to forming-setting," claim 1 was amended:

> means to constantly urge and advance said row of staples along said anvil plate [toward] *to place a forwardmost staple of said row on* said anvil surface, a staple driver mounted in said nose portion and shiftable vertically between a normal upper position *closely adjacent said forwardmost staple on said anvil surface* and a lower position....

(Bracketed material deleted; italicized material added.)

Becht's attorney made these remarks in submitting the amendment:

> The present invention is markedly different [from the cited Fishbein reference] in that ... the staple driver 6 *need only form the staple about the anvil surface, the driver not having to shift the staple to the anvil surface.*

(Emphasis added.)

In his remarks, Becht's attorney recognized that the examiner did not believe that original claim 1 "adequately set forth this distinction" over the Fishbein reference and argued:

> The [amended] claim now calls for means to constantly urge and advance the row of staples along the anvil plate to place a forwardmost staple of the row *on the*

*anvil surface.* The claim further indicates that the normal upper position of the staple driver is one in which the staples driver is *closely adjacent* to the *forwardmost staple on the anvil surface.* This is to further clarify the fact that that [sic] staple driver of the present invention does not have to devote any of its travel to the shifting of a staple from a magazine to the anvil surface prior to formation of the staple.

(Emphasis added.)

■ Thus Becht's attorney knew perfectly well the difference between "on" and "closely adjacent" when he amended the claim to avoid the reference and obtain allowance of the claim. That knowledge and action was of course binding on Becht. *See FMC Corp. v. Manitowoc Co., Inc.,* 835 F.2d 1411, 1415 n. 8, 5 USPQ2d 1112, 1115 n. 8 (Fed.Cir.1987). Yet, as above indicated, Becht testified at trial that "on" means "between the upper surface of the anvil ... and the lower limit of whatever abutting means is above it," and the district court said that definition would be understood by one skilled in art, that one dictionary definition of "on" is "juxtaposition," and that insofar as Becht testified that "on" meant "juxtaposed," his testimony was consistent with the claim language. That claim interpretation, however, is incontestably inconsistent with the position taken by Becht during prosecution of his patent application, with the repeated description of the invention in the specification, with the explicit amendment of the claim language from "toward" to "on," and with Becht's argument for patentability (no force is required to shift a staple from a magazine to the anvil). Hence the jury's and the trial court's claim interpretation cannot stand.[10]

**9.** That "on" must be interpreted as meaning the first of the dictionary definitions quoted by the district court, i.e., "position of contact," is clear from Becht's use of "on" and "upon" synonymously in the above-quoted portions of the specification. The dictionary definition of "upon" is "on the surface: on it." *Webster's New Collegiate Dictionary* 1276 (1979). On the

other hand, "juxtaposed" means to place "side by side," *id.* at 623, and thus cannot describe the claimed invention wherein the staples are not placed "side by side" with the anvil surface.

**10.** The district court's reliance on Becht's testimony that one could not mass produce a stapler at reasonable cost without providing some gap

*Literal Infringement*

█ The claim requires advancing means that places the forwardmost staple "on" the anvil surface, which must be interpreted as "in physical contact" with the anvil surface. The advancing means of the accused device places the forwardmost staple above, not on, the anvil surface. Thus the claim does not read on the accused device and there can be no literal infringement.

### Infringement Under the Doctrine of Equivalents

█ It is well established that limitations in a claim cannot be given a range of equivalents so wide as to cause the claim to encompass anything in the prior art. *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900, 221 USPQ 669, 678 (Fed.Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120, 225 USPQ 792 (1984). From the foregoing discussion, it is clear that a range of equivalents encompassing the above-the-anvil arrangement of Richard–Allan's stapler would also encompass the above-the-anvil arrangement of the prior art Fishbein stapler. In light of the claim and its prosecution history, it is irrelevant that Fishbein's staple is further above than Richard–Allan's. Expressed in terms of prosecution history estoppel, Becht surrendered any right to such a range of equivalents when he amended his claim to avoid the Fishbein reference and obtain his patent. He cannot now recapture that which he surrendered. *See Loctite*, 781 F.2d at 870, 228 USPQ at 96.

### CONCLUSION

The judgment entered on the jury's answers in respect of anticipation, obviousness, and willfulness is vacated. The judgment entered on the jury's answer in respect of infringement is reversed.

between the staple and anvil was misplaced. Manufacturing tolerances are immaterial to the interpretation of claim language. *See Mannesmann*, 793 F.2d at 1283, 230 USPQ at 47; *see also ACS Hosp. Sys., Inc. v. Montefiore Hosp.*,

COSTS

Senmed to bear costs.

VACATED IN PART—REVERSED IN PART.

PAULINE NEWMAN, Circuit Judge, dissenting.

This appeal is from a jury verdict of infringement, yet it is difficult to find in the majority opinion any deference to the jury, or application of the standard by which jury verdicts are reviewed on appeal. Thus I respectfully dissent from the review process followed by the panel majority. Applying the correct standard of review, I would affirm the judgment.

It is no more appropriate for the appellate court, than for the trial court on motion for judgment n.o.v., to decide the issue of infringement independent of the jury verdict. *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 33, 64 S.Ct. 409, 411, 88 L.Ed. 520 (1944) (when the issues have been properly presented to the jury, "[n]o court is then justified in substituting its conclusions for those of the twelve jurors"); *Verdegaal Bros., Inc. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1052 (Fed.Cir.), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987) ("A trial court's denial of a motion for JNOV must stand unless the evidence is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment could not reasonably return the jury's verdict".)

This court has emphasized that infringement is a question of fact. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1578, 1 USPQ2d 1081, 1090 (Fed.Cir. 1986) (appellate review determines if substantial evidence supported jury finding that infringement had been proved by a preponderance of the evidence); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 626, 225 USPQ 634, 642 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976,

732 F.2d 1572, 1578, 221 USPQ 929, 933 (Fed. Cir.1984); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1481, 221 USPQ 649, 653 (Fed.Cir. 1984).

106 S.Ct. 340, 88 L.Ed.2d 326 (1985) (infringement and equivalence are questions of fact). A jury verdict on the question of infringement receives the classical deference due to jury verdicts. This deference is not diminished when a term in a patent claim is construed as a first step in the infringement analysis.

When the meaning of a term in a patent claim is in dispute, a jury may resolve the dispute. *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 974, 226 USPQ 5, 8 (Fed.Cir. 1985):

> If the language of a claim is not disputed, then the scope of the claim may be construed as a matter of law. But when the meaning of a term in the claim is disputed and extrinsic evidence is necessary to explain that term, then an underlying factual question arises, and construction of the claim should be left to the trier or jury under appropriate instruction. [Citation omitted]

The review process was described in *Vieau v. Japax, Inc.*, 823 F.2d 1510, 1515, 3 USPQ2d 1094, 1098 (Fed.Cir.1987), wherein the court stated that the appellant's burden "is to show that the jury's factual findings were supported by at least substantial evidence and the legal conclusions made by the jury can be supported by those findings." *McGill Inc. v. John Zink Co.*, 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed.Cir.) *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984):

> Since the jury did not make express findings on claim construction, we must presume the existence of facts necessary to support the claim construction urged by McGill and determine if those facts were supported by substantial evidence. *Railroad Dynamics, supra.* Zink must convince us that there is no set of facts, consistent with McGill's interpretation, that was supported by substantial evidence.

In *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984), this court stated that

the appellant must come prepared to show that the jury's factual findings were not supported by substantial evidence, or if they were, that the jury's legal conclusion was not supported by those facts.

Thus when it is necessary for the jury to interpret a claim en route to deciding the issue of infringement, the appellant

> must demonstrate that no reasonable juror could have interpreted the claim in the fashion that supports the infringement finding.

*McGill Inc.*, 736 F.2d at 672, 221 USPQ at 948.

It was not error to charge the jury with determining the meaning of words in the claims as a first step in its determination of whether the claims were infringed. The jury's authority to decide questions of law as part of its fact-finding responsibility was affirmed early in the nation's history. Often quoted is the jury charge by Chief Justice John Jay in *Georgia v. Brailsford*, 3 U.S. (3 Dall.) 1, 4, 1 L.Ed. 483 (1794):

> But it must be observed that by the same law which recognizes this reasonable distribution of jurisdiction, you have nevertheless a right to take upon yourselves to judge of both, and to determine the law as well as the fact in controversy. On this, and on every other occasion, however, we have no doubt you will pay that respect which is due to the opinion of the court; for, as on the one hand it is presumed that juries are the best judges of facts, it is, on the other hand, presumable that the court are the best judges of law. But still both objects are lawfully within your power of decision.

The vitality of this decision-making process, and its consequence for appellate review of the jury verdict, has been analyzed and reaffirmed time and again by scholars of jurisprudence. *See, e.g.*, M.B. Louis, *Allocating Adjudicative Decision Making Authority Between The Trial and Appellate Levels: A Unified View of the Scope of Review, The Judge/Jury Question, and Procedural Discretion*, 64 N.C.L.Rev. 993, 1003 (1986) (footnotes omitted):

Ultimate facts going to the merits are usually reviewed narrowly and deferentially like questions of historical fact even when the underlying historical facts are not in dispute. Indeed, with the exception of a few specific substantive areas like constitutional and contract or commercial law, mixed questions going to the merits are almost presumptively classified as questions of fact, assigned to the jury, and reviewed narrowly on appeal from any fact finder.

*See also* 5A *Moore's Federal Practice* ¶ 50.07[2] at 50–70 (1988) (the reviewing court "must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury verdict.")

Many patent infringement determinations do not require a preliminary "claim interpretation", an issue born of the imprecision of language. But when the meaning of words in claims is at issue, recourse is had to evidence to show what was intended when the claim was placed in the specification and allowed by the patent examiner. Pertinent evidentiary material is thus the patent specification and the prosecution history, and may extend to the prior art and other claims. Witnesses may testify as to how a person in the field of the invention would have viewed the questioned words. *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1021, 4 USPQ2d 1283, 1286 (Fed.Cir.1987) ("When the meaning of key terms of claims is disputed, as in this case, extrinsic evidence may be adduced including testimony of witnesses, and reference may be had to the specification, the prosecution history, prior art, and other claims"); *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 657, 229 USPQ 992, 994 (Fed.Cir.1986) (resort to extrinsic evidence is always necessary to interpret disputed claims).

There was an issue in this case as to whether the word "on" in the claim phrase "on said anvil surface" meant that the staple touched the surface, or included a position of the staple above the surface without touching. The issue was pertinent to determination of literal infringement, for it was undisputed that in the accused device

the staple did not touch the surface. And if the jury found that there was no literal infringement because in its view the claim required touching, the interpretation of the word "on" would still be predicate to application of the structure/function/result test of the doctrine of equivalents. However, the charge to the jury to interpret the claims does not transform the factual question of infringement into a question of law, or remove decisional authority from the jury. *See generally* Louis, *supra* at 1002–04 (discussing jury verdicts and appellate review).

The jury was instructed on the correct approach to deciding the question of infringement:

The first step in determining infringement is to construe the claims. The terms used in Becht 844 Patent Claims 1 and 2 must be interpreted as they would be by those of ordinary skill in the art. In understanding the meaning of the words used in the claims, you should consider: (1) the patent specification, (2) the prosecution history of the patent in the Patent Office, and (3) testimony of expert witnesses.

... if an inventor wishes to use a term in some particular way other than that understood by one of ordinary skill in the art at the time the application was filed, he must define it in his patent prior to the time it issues.

No challenge has been raised to the correctness of the jury instructions. Thus we review the jury verdict to determine whether there is any basis on which a reasonable jury could have reached the verdict reached by this jury. *McGill, supra; Railroad Dynamics, supra. See generally* 1 S. Childress and M. Davis, *Standards of Review*, p. 194 (1986):

That application of law to facts is the jury's job, and on appeal it is generally not questioned in the same way that a judge's findings on a bench trial appeal, under Federal Rule of Civil Procedure 52(a), might be called *mixed law-fact* and then split into the component parts, with the law part going more freely to the reviewing court. In this way the law-

fact issue in jury trials is more a process than a rude dichotomy. [Emphasis in original]

In the process some issues called mixed law-fact in bench trials—and often reviewed more freely there—are unquestionably submitted to the jury. [Footnote omitted]

S. Weiner, *The Civil Jury Trial and the Law–Fact Distinction*, 54 Calif.L.Rev. 1867, 1919 (1966):

As a working rule, the task of law application should be entrusted to the jury, unless there are compelling reasons in a given case why the court should perform this function. The rationale for such an approach is the frequently expressed policy in favor of trial by jury, springing from constitutional guarantees. As the Supreme Court once stated, "The right to a jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts." *Jacob v. City of New York*, 315 U.S. 752, 752–53 [62 S.Ct. 854, 854, 86 L.Ed. 1166] (1942).

Since it was undisputed at trial that in the accused device the forwardmost staple does not touch the anvil surface, if the jury interpreted the claims to mean that "on" requires "touching", it follows that no reasonable jury, if correctly instructed, could have found literal infringement. (The jury instructions on literal infringement are not included in the Appendix, apparently because they were not referred to in the briefs, *see* Fed.Cir.R. 30(a)(2) and 30(b).) Thus I do not understand the statement by the panel majority that the inventor's asserted claim interpretation was "necessarily arrived at by the jury, and adopted by the district court", for the jury verdict is readily understood as pertaining solely to infringement by equivalency, whereby an expansive claim interpretation is not required in order to uphold the verdict.

Senmed charged infringement in terms of the doctrine of equivalents, and the jury was instructed on the issue. The portion of the instructions provided us shows that the jury was told the requirements for finding equivalency, including a description of prosecution history estoppel and a statement of the so-called "reverse" doctrine of equivalents. The jury was instructed that the claims can not be extended to cover that which was in the prior art, or to recover that which was yielded in order to obtain the patent.

Thus I respectfully disagree with the panel majority's statement that "[i]n light of the claim and its prosecution history, it is irrelevant that Fishbein's [the prior art] staple is further above than Richard–Allan's". It is not irrelevant: it is the core of the question of equivalency, for it shows that a reasonable jury could have found that there was room for equivalent structure between the prior art and the accused device, without violating the doctrine of prosecution history estoppel. As this court said in *Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.*, 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed.Cir.1984) "[t]he fact that the claims were narrowed does not always mean that the doctrine of file history estoppel completely prohibits a patentee from recapturing some of what was originally claimed".

In determining if a reasonable jury could have found equivalency without treading upon the prior art, we observe that this issue was the subject of extensive testimony at trial. Witnesses testified that in the accused device the staple was "between 9– to 13– thousandths [of an inch above the anvil] ... somewhat less than a diameter of the staple", and that in the Fishbein device the distance was "a little over half an inch". The Fishbein patent describes the distance as "some substantial length, depending upon circumstances". There appears to have been no dispute on these points. There was substantial evidence on which a reasonable jury could have found equivalency, based on the location of the staple of the accused device within the area above the anvil surface that is not occupied by Fishbein. As was stated recently in

*Black & Decker, Inc. v. Hoover Service Center*, 886 F.2d 1285, 1295 (Fed.Cir.1989):

> [T]his court has held that the mere fact of amendment does not necessarily preclude application of the latter doctrine [of equivalents], pointing out that an amendment may result in a limiting effect on the range of equivalents "within a spectrum ranging from great to small to zero." *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1363, 219 USPQ 473, 481 (Fed.Cir.1983).

*See also LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 867 F.2d 1572, 1576, 9 USPQ2d 1995, 1999 (Fed.Cir.1989) ("the breadth of the amendment does not necessarily equate with the breadth of the resulting estoppel"). Nothing in the record requires a reasonable jury to limit the claimed invention to a range of equivalents insufficient to encompass the Richard–Allan structure.

The district court wrote a detailed opinion in response to the post-trial motions. The role of the trial judge, as of the appellate panel, is simply to ascertain whether the jury's verdict is sustainable. It is unwarranted to criticize the district court for not "discuss[ing] the applicable claim language, the specification, or the prosecution history in an effort to arrive at its own claim interpretation as a matter of law". Nor is such process appropriate to the appellate tribunal. *See Orthokinetics, Inc.*, 806 F.2d at 1572–73, 1 USPQ2d at 1085–86 (it would be "a misunderstanding of our appellate role" for this court to determine what the evidence as a whole supports rather than whether there was substantial credible evidence on which the jury could have based its critical findings.)

Despite the lengthy trial the panel majority, overturning the jury's verdict, does not address the testimony and exhibits other than that of the inventor Becht, the panel majority appearing to criticize the weight that the district court may have given to Becht's testimony, based on the district court's discussion of its denial of Richard–Allan's motion for judgment n.o.v. But it is not the district court's reasoning that is reviewed on appeal from a jury verdict: it

is whether the jury's verdict is sustainable on any reasonable view of the evidence before it. *See id.* at 1580, 1 USPQ2d at 1091 ("It is not necessary to determine which combination of facts, among those established by substantial evidence at trial and recognized by this court as capable of contributing to a willfullness finding, were relied upon by the jury. This court, and the district court on the motion for JNOV, must uphold the jury determination of willfullness if there is any set of facts supported by substantial evidence and capable of supporting that jury determination.") A reasonable jury could have found that a device whose staple rests 9–13 thousandths of an inch above the anvil is equivalent to one whose staple touches the anvil.

This court early in its existence reaffirmed that patent jury trials are subject to the same rules as all jury trials. *Railroad Dynamics*, 727 F.2d at 1514, 220 USPQ at 937 ("there is no reason for distinguishing the submission of legal questions to a jury in patent cases from the routine submissions of legal issues to juries in other types of cases"); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547, 220 USPQ 193, 197 (Fed.Cir.1983) ("So long as the Seventh Amendment stands, the right to a jury trial should not be rationed, nor should particular issues in particular types of cases be treated differently from similar issues in other types of cases".) *See generally* H.T. Markey, *On Simplifying Patent Trials*, 116 F.R.D. 369, 370 (1987) ("There is neither reason nor authority for employing in a patent trial procedures and practices different from those employed in any other civil trial. Indeed, reason and authority mandate the contrary.")

As discussed *supra*, on review the appellate tribunal will ascertain whether a reasonable jury could have reached the verdict that was reached, based on factual findings and legal conclusions that are supportable on the evidence. The record provided us shows that there was substantial evidence to support a jury finding of infringement by equivalency on the claim interpretation most favorable to Richard–Allan, i.e., that "on" requires "touching". This is the

claim interpretation reached independently by the panel majority. It is unnecessary to decide if some other claim interpretation could have been adopted by the jury. *See Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946) ("the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.")

Sound administration of justice requires that patent litigation continue to have access to the mainstream of the trial and judicial process. I am distressed at this new disregard of the deference due to jury verdicts, this new uncertainty as to what is required of the trial judge in patent jury trials, this inconsistency with precedent.