895 F.2d 1422
 15 U.S.P.Q.2d 1475
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
THE BOC GROUP, INC., Plaintiff-Appellee,
v.
NOVAMETRIX MEDICAL SYSTEMS, INC., Defendant-Appellant.
 No. 89-1589.
 United States Court of Appeals, Federal Circuit.
 Jan. 31, 1990.
Rehearing Denied March 13, 1990.
 
 Before ARCHER, Circuit Judge, BENNETT, Senior Circuit Judge, and MAYER, Circuit Judge.
 Archer, Circuit Judge.
 
 DECISION
 
 1
 Novametrix Medical Systems, Inc. (Novametrix) appeals from the judgment of the United States District Court for the District of Connecticut, Civil Action No. N-86-198 (June 6, 1989), holding claims 1-4 and 13 of U.S. Patent No. 4,407,290 ('290 patent) not invalid or unenforceable and infringed by Novametrix. We reverse and remand.
 
 OPINION
 
 2
 The '290 patent was issued to Wilber and assigned to The BOC Group, Inc. (BOC). The issue of whether the Novametrix oximeter device infringes claims 1-4 and 13 of the '290 patent, either literally or under the doctrine of equivalents, turns on the proper interpretation of "normalizing means" and "normalizing" as used in claim 1 and claim 13, respectively. Claim interpretation being a matter of law, our review of the district court's decision on this issue is de novo. Johnston v. IVAC Corp., 885 F.2d 1574, 1579, 12 USPQ2d 1382, 1385-86 (Fed.Cir.1989).
 
 
 3
 In finding infringement, the district court interpreted "normalizing means" and "normalizing" as requiring the performance of two functions:
 
 
 4
 "... to implement the mathematical division of the AC component by the DC component for each of the red and infrared channels," and "... to adjust or scale the signal so that it is always within a predetermined range.
 
 
 5
 Slip op. at 7 (emphasis added). In describing the scaling function, the court stated:
 
 
 6
 the repeated adjustment or scaling of the signal by the factor G, permits the Wilber oximeter to automatically adapt to a wide variety of input signals which often span the range of 100 to 1.
 
 
 7
 Id. (Emphasis added.) The first of the functions ascribed to the normalizing means is not in dispute. There is considerable disagreement, however, as to the purpose and scope of the second stated function. The district court determined, as indicated by the emphasized quotations from its opinion, that in "normalizing" the signal, it is scaled to be within a predetermined range which permits the invention to adapt to a wide variety of input signals.
 
 
 8
 Contrary to the district court's interpretation of the scaling function, the specification and prosecution history of the '290 patent make abundantly clear that the only purpose of the second function of the normalizing means is to scale the total AC + DC signal so that the DC component is equal to a known, predetermined value, not to bring it within a predetermined range. Moreover, the purpose of setting the DC component equal to such known value is to permit the patented invention to remove the impact of the DC component from the oximetry analysis by subtracting its value (as a voltage) from the total signal.
 
 
 9
 The predetermined level requirement is described in the patent specification as follows:
 
 
 10
 The pulse train output from converter 25 is coupled through test unit 26 to normalization unit 52 of normalizing section 27 where the signal representative of the light received from each emitter is scaled so that the DC components of each are normalized to a predetermined reference level.... The normalization circuit functions to scale both the AC and DC components of each signal so that the DC (average) component is made equal to a known, preset level.
 
 
 11
 Col. 4, lines 19-32 (emphasis added).
 
 
 12
 The specification explains that the DC components are set to a predetermined level so that they may be later subtracted from the processed signal, as follows:
 
 
 13
 This output is coupled to low pass filters 57 and 58 which filters also receive an input from voltage reference generator 60. As shown in FIG 5, the low pass filters also operate to subtract the DC voltage supplied by the generator 60 from the input signal to produce an output signal that is essentially an AC component on a zero reference level.
 
 
 14
 Col. 4, lines 58-62.
 
 
 15
 During reexamination of the '290 patent before the United States Patent & Trademark Office, following the examiner's rejection, the patentee stated that:
 
 
 16
 Normalization as disclosed and claimed in the ['290] patent ... divides the AC component by the DC component [and] also scales the DC component to a predetermined reference level.
 
 
 17
 Appendix at A003890.
 
 
 18
 The examiner then allowed the subject claims stating:
 
 
 19
 The [allowed] claims include limitations specifically relating to the normalizing by scaling or adjusting the DC (average) component. Such normalization, relating to the adjustment of this component to a predetermined level, is not shown by the references of record.
 
 
 20
 Appendix at A003902 (emphasis added).
 
 
 21
 The evidence relied on by BOC to support the district court's interpretation of the claimed normalizing means and function is found in two statements submitted by the applicant in response to the request for reexamination (Appendix at A003823) and to the examiner's initial rejection during the reexamination proceeding (Appendix at A003887). However, these statements are inconsistent with, and unsupported by, the original claims, specification and prosecution history. Accordingly they should be accorded little or no weight in interpreting claim language that was unchanged in the reexamination. See Senmed v. Richard-Allen Medical Ind., 888 F.2d 815, 819 n. 8, 12 USPQ2d 1508, 1512 n. 8 (Fed.Cir.1989) (inventor may not "proffer an interpretation that would alter the undisputed public record (claim, specification, prosecution history.)"). The trial testimony cited in BOC's brief similarly provides no support for an interpretation of normalization that involves scaling the signal to a range rather than setting the DC component of the signal to a known, preset value, and represents at best post hoc rationalization. Id. ("[P]ost hoc opinion testimony on the legal question ... was of little if any significance.").
 
 
 22
 Accordingly, the district court erroneously interpreted the second function of the "normalizing means" of claim 1 and the "normalizing" step of claim 13 as scaling "the signal so that it is always within a predetermined range". Properly interpreted, claims 1 and 13 require a normalizing means (or process) which scales the total AC + DC signal of the red and infrared channels in such a manner as to set the DC (average) component of each signal to a known, preset level. In the embodiment of the invention disclosed in the specification, subtraction of the DC component is made by reference to the level to which the signal is scaled. Thus, normalization as used in the claim functions to accommodate subtraction. Since the Novametrix oximeter undisputedly has no circuitry functioning to set the DC component of the output signal equal to a predetermined value, the asserted claims cannot, as a matter of law, be literally infringed by Novametrix' device. See Pennwalt Corp. v. Durand-Wayland, 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc), cert. denied, 485 U.S. 961 (1988).
 
 
 23
 Although Novametrix invites us to hold that a finding of infringement under the doctrine of equivalents is precluded in this case due to prosecution history estoppel and/or the prior art, we decline to do so because that issue was not addressed by the district court. Accordingly, the case is remanded to the district court for an infringement analysis under the doctrine. See Graver Tank & Mfg. Co. v. Linde Air Prods., 339 U.S. 605, 608, 85 USPQ 328, 330 (1950).
 
 COSTS
 
 24
 Costs to Novametrix.