965 F.2d 1064
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Charles PETROSKY, Plaintiff-Appellant,
v.
NIKE, INC., Defendant-Appellee.
 No. 91-1513.
 United States Court of Appeals, Federal Circuit.
 April 21, 1992.
 
 Before RICH, MAYER and CLEVENGER, Circuit Judges.
 DECISION
 RICH, Circuit Judge.
 
 
 1
 This appeal is from a summary judgment of no infringement by Nike of Petrosky's patent, No. 4,129,951, issued December 19, 1978, for "Air Cushion Shoe Base," granted by the United States District Court for the Eastern District of Virginia, Alexandria Division. Judgment was entered August 30, 1991, on motion of Nike. We affirm.
 
 DISCUSSION
 
 2
 Petrosky asserted only Claim 1 of his patent, alleging infringement by models of Nike shoes known as "Air Max," "Air Jordan," and others. Air Max was accepted as representative. Deposition evidence was taken, including that of Petrosky's technical expert, Prof. Voloshin, and Nike's technical experts, Dr. Clarke, a Nike General Manager, and Prof. McDaniel, a consultant. The infringement issue was extensively briefed and a hearing was held on the motion at the conclusion of which the trial judge gave a short oral opinion granting the motion for summary judgment. There is no written opinion nor are there any findings of fact or conclusions of law.
 
 
 3
 Propriety of Summary Judgment.
 
 
 4
 Although Petrosky has not distinctly argued that it was improper to decide this case by summary judgment, he has made several references to issues which he contends should have been decided by a jury as disputed factual issues for which reason we deem it appropriate to state that we consider this a proper case to have been decided by summary judgment. In our view, there is no genuine issue as to any material fact. There is no question about the structure of the alleged infringing shoe bases and the only other matter to be considered is the proper construction of the single claim in issue. The technology is neither complex nor abstruse and can be clearly understood by anyone having a good command of the English language and enough mechanical ability and comprehension of pneumatics to inflate a basketball or a tire. The only other necessary qualification is an understanding of patent law. Therefore, summary judgment was the proper and preferred solution. Johnston v. IVAC Corp., 885 F.2d 1574, 12 USPQ2d 1382 (Fed.Cir.1989).
 
 
 5
 The merits of Petrosky's claim.
 
 
 6
 The dispute in this case is altogether a matter of construing Claim 1. Claim construction is a question of law for the courts, initially the trial court and then this court on appeal. Petrosky admits this, citing Senmed Inc. v. Richard-Allan Medical Industries Inc., 888 F.2d 815, 818, 12 USPQ2d 1508, 1511 (Fed.Cir.1989), which fully sets forth this court's view on that point. The claim must be construed in the light, not only of its language, but in the light of the specification of which it is a part and the prosecution history of the application for patent. Id. Here, just as was the case in Senmed, the claim language, specification, and prosecution history "belie the claim interpretation asserted by" Petrosky. Id. at 819, 11 USPQ2d at 1511.
 
 
 7
 Petrosky's counsel makes a heroic attempt to depict his invention as pioneering in the field of air cushioned shoe bases, an invention which was offered to Nike with full disclosure and a suggestion of a license under the patent, and which was adopted by Nike and is the reason for its market success. This is mere propaganda. Petrosky's invention is shown by the patent prosecution history to have been a minor entry in a crowded field of air-cushioned shoe bases. The patent specification itself lists 13 other prior patents on "pneumatic type cushioned soles" and a comparison of the disclosed Petrosky invention with the Nike structure shows very little resemblance between the two. The Petrosky briefs make no effort to point out any structural resemblance but rely only on the language of claim 1 which counsel tries endlessly to apply to Nike's shoe. In the district court this effort failed and it must also fail here.
 
 
 8
 The sole claim in suit.
 
 
 9
 Claim 1 is a clear combination-of-elements claim in simple, non-technical language which requires no technical explanation. The claim names six elements; in other words, it has at least these six corresponding limitations. If any claim limitation cannot be found in the accused shoe bases, the claim is not literally infringed. Johnston, 885 F.2d at 1577-78, 12 USPQ2d at 1384. If no equivalent of the missing limitation can be found either, there can be no infringement under the doctrine of equivalents. That is the situation in this case. We will now show what the limitation or limitations are.
 
 
 10
 The first three elements of the claim 1 "shoe base" are: (1) a floor-contacting flexible sole, (2) a flexible insole above the sole which contacts the foot, and (3) a rim around the outer and inner soles. These three elements are present in Nike shoes but they are also common to shoes of this type generally and in themselves are not of importance to the infringement issue. Claim 1 requires, however, that the rim (3) connect the spaced-apart "sole and insole in airtight relationship." That is the beginning of the claim's definition of Petrosky's inventive contribution.
 
 
 11
 It is interesting to note that the arrangement of the first three elements, the insole being already described as "above" the outer sole, is such that there is a space between them. This is implicit because the next shoe element or claim limitation (4) calls for "flexible partitions" which are defined as being "between the sole and the insole." These partitions are further specified as "extending transversely across the rim from side to side ... for dividing the shoe base [made up of elements (1), (2), and (3) above] into plural inflatable transverse compartments."
 
 
 12
 Here we pause in our recitation of the claim 1 limitations to quote the broadest description of the invention to be found in the specification under the heading "SUMMARY OF THE INVENTION":
 
 
 13
 The present invention is a shoe base which has a sole, a rim extending upward from a periphery of the sole, and partitions extending across the rim and an insole secured to the top of the rim and the partitions.
 
 
 14
 Aligned metering valving orifices extend through the partitions and through one end of the rim. Preferably the orifices extend through a heel portion and medially through the partitions which are spaced thwartwise across the rim. [Emphasis ours.]
 
 
 15
 This is not a description of a preferred embodiment of Petrosky's invention or of any other specific embodiment; it is a written description of what he thought he had invented when he filed his patent application. The embodiments are described later. In view of some of the arguments made in this case, the term thwartwise is intriguing. Webster defines a "thwart" as, inter alia, "A rower's seat reaching athwart a boat."
 
 
 16
 Returning now to Claim 1, after reciting the outer sole, insole, rim, and partitions which define the "inflatable transverse compartments" into which the shoe base cavity is divided, the next limitation (5) in the claim is:
 
 
 17
 each of the partitions having a small metering orifice for flowing fluid [air] through the metering orifice from one section to another section [emphasis ours].
 
 The final claim limitation (6) is:
 
 18
 means joining the sole, the rim, the insole and the partitions in airtight relationship.
 
 
 19
 With such a means-plus-function expression we have to look to the specification for the disclosed means and we find it to be welding by heating or by applying solvents or adhesives to edges immediately before they are joined. Of course, equivalents thereof are to be included within the claim coverage with respect to that limitation. 35 USC 112 para. 6.
 
 
 20
 Why Claim 1 is not infringed.
 
 
 21
 There are two ways to reject the charge of infringement in this case: We can hold the claim limitations are not met or, even if they literally are, there is no infringement because of the fundamental differences between the claimed and the accused shoes. We do not know which way the trial judge approached the issue because he did not say. The judge's oral opinion is unclear and it appears to us that the court reporter misunderstood what he said, (reporting "portion" for "partition," apparently). However, the same result is reached by either approach.
 
 
 22
 Giving Claim 1 its broadest reasonable construction, it describes a shoe base containing a cavity defined by outer and inner soles surrounded by a rim to which they are connected in airtight relationship, the cavity being divided into "plural inflatable transverse compartments" by "flexible partitions." Nike has no such structure. Where Petrosky has his compartmentalized cavity, Nike's Air Max has a foam material midsole, in which are imbedded separate inflated heel and toe air bladders. A shoe upper is secured to the foam midsole. A sockliner is placed inside the upper and is secured to nothing. It is what contacts the foot of the wearer as does Petrosky's "flexible insole" but is not connected to anything, particularly not connected in "airtight relationship," as the claim requires. We cannot see any correspondence between these aspects of Claim 1 and Nike's shoe and we hold that, had this case gone to trial no reasonable juror could have seen one either.
 
 
 23
 What Petrosky has attempted in this case is to read Claim 1 on the heel air bladder in Nike's Air Max shoe. This must fail also. The structure of this shoe element is not in dispute. It is not a "shoe base" divided into "plural inflatable transverse compartments" as called for by Claim 1, but a heel cushion encapsulated in the foam material midsole made from a flat, tubular, gas-impermeable plastic the top and bottom layers of which have been welded together at intervals by radio-frequency welding to keep the unit from expanding into a pillow shape. The welds are transverse, centered and extend about half the width of the tubing (1 1/2" out of 3"). All parts of the cushion are otherwise wide open to each other internally so that the internal pressure is the same throughout. We are unable to see any "flexible partitions" in the cushion and, more particularly, there is certainly no "small metering orifice" to be found anywhere. Petrosksy tries to persuade us that the welds are "flexible partitions extending transversely across the rim from side to side" with each partition "having a small metering orifice" in it. This will not fly. Even if we can call the welds partitions, there are no orifices in any of them. There is no "rim" between which the welds "extend." Thus there are numerous claim limitations completely absent from Nike's shoe. Since nothing has been substituted for them, neither we nor a reasonable juror could find infringement under the doctrine of equivalents.
 
 
 24
 For the above reasons, the holding of no infringement was correct.