PER CURIAM.
 

 LaBounty Manufacturing, Inc. (LaBounty) appeals from the final decision of the United States International Trade Commission (ITC) in Investigation No. 337-TA-252,
 
 “Certain Heavy-Duty Mobile Scrap Shears,
 
 ” not to review the administrative law judge’s (AU) order holding, in a summary determination, that LaBounty’s U.S. Patent No. 4,519,135 (’135) was not infringed and terminating the investigation. La-Bounty also appeals the denial of its motion to set aside the final action of the ITC and the denial of its petition for reconsideration. The noninfringement determination of the ITC is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 *
 

 OPINION
 

 A. The ITC instituted the Scrap Shears investigation under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 (1982 & Supp. IV 1986), based on the assertion that claims 7 and 20 of La-Bounty’s '135 patent were infringed by the scrap shears of Dudley Shearing Machine Manufacturing Co., Ltd. (Dudley). The patented invention and the accused devices are heavy duty mobile scrap shears used in the demolition and scrap processing industry. The patented device and accused devices are depicted below.
 

 The shear of the invention described in the ’135 patent includes a lower jaw and an upper jaw which are interconnected by a pivot and bearing structure that accommodates swinging of the upper jaw relative to the lower jaw. The upper jaw has a shear blade which has inner and outer edge portions oriented obliquely to each other. The
 

 [[Image here]]
 

 lower jaw has a similar shear blade and a rigid guide blade extending outward from the pivot. The supporting surface of both the inner and outer portion of the guide blade is spaced below the inner and outer portions of the lower shear blade. The specification of the ’135 patent states:
 

 The guide blade, which is spaced by the width of the open slot from the cutting edge of the lower shear blade, has its upper edge spaced well below the cutting edge of the lower shear blade. The guide blade will thereby provide a workpiece support for the workpiece af
 
 *1574
 
 ter the blades have sheared off a length of the workpiece. The backhoe boom and shear may then be swung to the side and thereby move the shear blade along the workpiece in preparation for cutting off another length of the workpiece. As a result, a long girder or pipe or heavy cable may be cut several times into short lengths without dropping the workpiece and without having to repeatedly pick the workpiece off the ground.
 

 Claims 7 and 20 of the patent describe the spacing between the edge of the lower shear blade and the supporting surface of the guide blade. The question at issue is whether the spacing requirements apply to both the inner and outer portions of the guide blade.
 

 Claim 7 of the patent reads in pertinent part:
 

 the guide blade having a top supporting surface spaced below the cutting edge of the lower shear blade by a distance at least as great as the approximate thickness of the lower shear blade to be normally spaced below the workpiece on the shear blade, the top supporting surface extending along both of the inner and outer edge portions of the lower shear blade....
 

 The pertinent portion of claim 20 reads:
 

 the guide blade having a top supporting surface spaced below the workpiece engaging edge portions of the lower shear blade by a distance approximating the depth of the insert bar on the lower shear blade to be normally spaced below the workpiece on the shear blade, the top supporting surface extending along both of the inner and outer edge portions of the lower shear blade....
 

 The ITC construed these claims as requiring that the spacing between the top supporting surface of the guide blade and the lower shear blade be applied to both the inner and outer portions of the guide blade. Since Dudley’s devices did not satisfy this limitation, the AU held there was no literal infringement of the ’135 patent. Further, on the basis that the claim limitations relating to the spacing were amended during prosecution, the AU held that La-Bounty is “estopped by the prosecution history of the ’135 application from asserting the doctrine of equivalents.”
 

 LaBounty contends that, properly interpreted, disputed claims 7 and 20 require only a portion of the supporting surface of the guide blade to comply with the spacing limitations stated in the claims. The AU erred, according to LaBounty, in requiring that both the inner and outer portions of the supporting surface of the guide blade meet the distance requirement limitation.
 

 B. Analysis of patent infringement involves two inquiries: the claims must be properly construed to determine their scope, and then it must be determined whether the properly interpreted claims encompass the accused structure.
 
 Uniroyal, Inc. v. Rudkin-Wiley Corp.,
 
 837 F.2d 1044, 1054, 5 USPQ2d 1434, 1441 (Fed.Cir.),
 
 cert. denied,
 
 — U.S. -, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Claim construction is reviewed as a matter of law. The interpretation of a claim, however, may depend on evidentiary material about which there is a factual dispute, requiring the resolution of factual issues.
 
 ZMI Corp. v. Cardiac Resuscitator Corp.,
 
 844 F.2d 1576, 1578, 6 USPQ2d 1557, 1559 (Fed.Cir.1988). “To ascertain the true meaning of disputed claim language, resort should be made to the claims at issue, the specification, and the prosecution history.”
 
 Loctite Corp. v. Ultraseal Ltd.,
 
 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir.1985);
 
 accord Moeller v. Ionetics, Inc.,
 
 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed.Cir.1986). “[T]he prosecution history ... limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.”
 
 Standard Oil Co. v. American Cyanamid Co.,
 
 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985).
 

 Although claims 7 and 20 require that the top supporting surface of the guide blade extend along both the inner and outer portions of the lower shear blade, the language does not clearly indicate whether the requisite spacing must exist all along the guide blade. This question is clarified by the specification of the ’135 patent which states:
 

 As is evident in FIGS. 3 and 4, the supporting edge portions 28.1 and 28.2 of the guide blade are spaced below the
 
 *1575
 
 edge portions 32.1 and 33.1 of the lower shear blade 27 by a distance approximating the thickness of the shear blade 27, or approximating the depth of the inset bars 32, 33 as seen in FIG. 4.
 

 The AU noted that at the time claim 7 was amended to provide spacing limitations and claim 20 was added, the above sentence was added to the specification. LaBounty argued that “the added language conforms to the language used in the claims.” This change taught, according to the AU, that the spacing limitation applied to both supporting surfaces of the guide blade.
 

 During the prosecution of the ’135 patent, LaBounty also argued, with reference to claims 7 and 20, that “[t]he guide blade in the present invention has its
 
 top supporting surface 28.1, 28.2
 
 spaced below the edge portion of the lower shear blade by a very substantial distance.” (Emphasis added.) The top supporting surface of the guide blade, which was to be “spaced below the edge portion,” again was intended to consist of both inner 28.1 and outer 28.2 portions of the guide blade. LaBounty also noted that “important aspects of the present invention which are set forth in claim 7” are that “[a]s the shearing action occurs ... the top supporting surface of the guide blade is spaced sufficiently far below the edge portion of the lower shear blade as to prevent any interference between the workpiece and the top surface of the guide blade until the principal amount of cutting of the workpiece has been accomplished.” It further stated during prosecution with respect to amended claim 7 that:
 

 the top supporting surface of the guide blade extend[s] along both of the inner and outer edge portions of the lower shear blade and [is] spaced below the cutting edge of the lower shear blade by a distance at least as great as the approximate thickness of the lower shear blade. Claim 7 is clearly allowable.
 

 As to the new claim 20, LaBounty said that it was “drawn along the lines of allowable claim 7 and is allowable therewith.”
 

 In view of the language of the claims, the specification and the prosecution history, we are not persuaded that the AU erred in his claim interpretation. Under that interpretation the claims require that the entire supporting edge of the guide blade conform to the distance limitations included in claims 7 and 20.
 

 The AU’s literal infringement determination, i.e., whether the claims read on the accused device, is a factual inquiry and is reviewed on a substantial evidence standard.
 
 SSIH Equip. S.A. v. United States Int’l Trade Comm’n,
 
 718 F.2d 365, 371-72, 218 USPQ 678, 684 (Fed.Cir.1983). The ITC’s determination that the accused device does not literally infringe LaBounty’s patent is supported by substantial evidence. The finding that only the inner portion of the guide blade of the accused shear is spaced below the cutting edge of the lower shear blade by the requisite distances prevents a literal reading of the claim on the accused device.
 

 C. With respect to LaBounty’s contention that Dudley’s shears infringed under the doctrine of equivalents, the AU held LaBounty to the literal language of the claim with respect to the guide blade limitations by reason of prosecution history es-toppel. Apart from this part of the claim, as interpreted above, the claim literally reads on the accused device. The accused device also partially meets the “spaced below” limitation applicable to the guide blade but not by the requisite distance along the entire length of the shear blade.
 

 In holding LaBounty to the literal claim language and denying the assertion of infringement under the doctrine of equivalents, the AU looked at the prosecution history only to the extent of determining that the amendments to claims 7 and 20 adding the specific distances and the accompanying arguments were made in response to a rejection based on prior art. Specifically, he stated:
 

 The language [referring to LaBounty’s arguments accompanying the amendments] shows that complainant’s argument was in reference to overcoming the prior art. The administrative law judge finds it unnecessary to make a detailed analysis of the prior art.
 
 See Prodyne Enterprises, Inc. v. Julie Pomerantz, Inc.,
 
 [743 F.2d 1581, 1583, 223 USPQ 477, 478 (Fed.Cir.1984)].
 

 
 *1576
 
 The application of prosecution history estoppel is a question of law and is reviewed for legal correctness.
 
 Loctite Corp.,
 
 781 F.2d at 871 n. 7, 228 USPQ at 96 n. 7;
 
 Moeller,
 
 794 F.2d at 659, 229 USPQ at 996. We conclude that the AU here misinterpreted the legal import of
 
 Prodyne. Prodyne
 
 does not stand for the broad proposition that, if an amendment adds a limitation which distinguishes a feature of the invention from a prior art reference, no equivalent of that feature can be asserted and, thus, no analysis of the prior art disclosure is necessary or appropriate. In
 
 Prodyne,
 
 the patentee argued that an added limitation was “unnecessary.” 743 F.2d at 1583, 223 USPQ at 478. LaBounty does not so argue here. LaBounty accepts the limitation but objects to the denial of any equivalents thereof. It seeks consideration of the prior art to show that it is not attempting to resurrect coverage for prior art structures which provide the basis for the accused device. The prior art disclosures, per LaBounty, are markedly different from both the patented invention and Dudley's shears.
 

 Our precedent does not preclude an analysis of the prior art pertinent to a limitation which was added to overcome a rejection based on that art. For example, the analysis in
 
 Great Northern Corp. v. Davis Core & Pad Co.,
 
 782 F.2d 159, 228 USPQ 356 (Fed.Cir.1986), written by Judge Rich who also authored
 
 Prodyne,
 
 clearly negates a mechanical rule for determining prosecution history estoppel’s effect on the range of equivalents. The conclusion in
 
 Great Northern,
 
 based on
 
 a review of pri- or art
 
 and the language of the amendment, was that:
 

 The final wording of the claims of the ... patent, while clearly distinguishing from [the prior art] cited in support of a rejection, did not constitute a surrender of all but the literal location of the recesses recited in claim 1.
 

 782 F.2d at 166, 228 USPQ at 359-60.
 
 See also Loctite Corp.,
 
 781 F.2d at 871, 228 USPQ at 96 (“whenever the doctrine is evoked, ‘a close examination must be made as to, not only what was surrendered, but also the reason for such a surrender;’ the fact that claims were narrowed ‘does not always mean that the doctrine of file history estoppel completely prohibits a patentee from recapturing some of what was originally claimed.’ ” (quoting
 
 Bayer Aktiengesellschaft v. Duphar Int’l Research B.V.,
 
 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed.Cir.1984));
 
 Hughes Aircraft Co. v. United States,
 
 717 F.2d 1351, 1366, 219 USPQ 473, 484 (Fed.Cir.1983) (government spacecraft much closer to patentee’s satellite than to prior art space vehicle).
 

 Amendment of claims is a common practice in the prosecution of patent applications and may serve different functions.
 

 Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero. The effect may or may not be fatal to application of a range of equivalents broad enough to encompass a particular accused product. It is not fatal to application of the doctrine itself.
 

 Hughes Aircraft Co.,
 
 717 F.2d at 1363, 219 USPQ at 481. Thus, although an AU may not make a speculative inquiry into whether a claim would have been allowable over the prior art without any amendment, this does not relieve the AU of determining an appropriate range of equivalents, because the breadth of the amendment does not necessarily equate with the breadth of the resulting estoppel.
 

 Whether consideration of the prior art in this case would lead to the conclusion that the substituted spacing in the accused device is outside the range of permissible equivalents we do not decide. Nor do we decide whether the substituted length of the spacing is an equivalent of that guide blade limitation. However, we do hold that an analysis of the prior art was necessary here to determine whether prosecution history estoppel prevents the assertion of such equivalency. Accordingly, we remand for redetermination of the scope of prosecution history estoppel.
 

 In view of his ruling on prosecution history estoppel, the AU did not complete an infringement analysis. Under
 
 Graver
 

 
 *1577
 

 Tank & Mfg. v. Linde Air Prods. Co.,
 
 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 330 (1950), the question to be answered is whether the accused device performs substantially the same function, in substantially the same way, to achieve substantially the same result as the invention defined by claims 7 and 20. There is no dispute that the accused device performs substantially the same overall function and achieves substantially the same overall result as the claimed invention. The dispute then is over whether they do so in substantially the same way.
 
 See Pennwalt Corp. v. Durand-Wayland, Inc.,
 
 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987)
 
 (in
 
 banc),
 
 cert. denied,
 
 — U.S. -, -, 108 S.Ct. 1226, 1474, 99 L.Ed.2d 426, 703 (1988). On this point our precedent instructs that substantially the same way is shown if every limitation of a claim is satisfied either exactly or by a substantial equivalent in the accused device.
 
 See Pennwalt Corp., 833 F.2d
 
 at 937, 4 USPQ2d at 1741;
 
 Perkin-Elmer Corp. v. Westinghouse Elec. Corp.,
 
 822 F.2d 1528, 1532-33, 3 USPQ2d 1321, 1324-25 (Fed.Cir.1987);
 
 Hughes Aircraft,
 
 717 F.2d at 1364, 219 USPQ at 482. Thus, unless LaBounty is barred by prosecution history estoppel, a finding that the Dudley shear contains a substantial equivalent of the guide blade spacing limitation would satisfy the tri-partite infringement inquiry of
 
 Graver Tank.
 

 COSTS
 

 Each party shall bear its own costs.
 

 AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED.
 

 *
 

 Our decision to vacate and remand in Appeal No. 87-1258 (non-infringement) makes it unnecessary and inappropriate to consider Appeal No. 87-1525 (denial of motion and petition for reconsideration) at this time.