56 F.3d 84
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 POPEIL PASTA PRODUCTS, INC., Plaintiff-Appellee,
v.
CREATIVE TECHNOLOGIES CORPORATION, Defendant-Appellant.
 No. 95-1017.
 United States Court of Appeals, Federal Circuit.
 May 26, 1995.
 
 Before NEWMAN, MICHEL and LOURIE, Circuit Judges.
 MICHEL, Circuit Judge.
 
 
 1
 Creative Technologies Corporation (CTC) appeals the April 25, 1994 and the September 2, 1994 decisions of United States District Court for the Central District of California, Docket No. CV 93-4351-WMB, granting summary judgment for Popeil Pasta Products (Popeil) that Popeil's pasta maker cannot infringe CTC's U.S. Patent No. 4,391,575 (the '575 patent) as properly construed either literally or under the doctrine of equivalents, and dismissing CTC's counterclaim for copyright infringement because substantial objective similarity of the infomercials cannot be shown. Because the district court correctly interpreted the claims of the '575 patent to foreclose literal infringement and correctly concluded that the asserted equivalent was precluded because the patentee had surrendered the technology of the accused pasta maker, we affirm.
 
 BACKGROUND
 A. The Patent
 
 2
 Popeil's pasta maker, the accused device, extrudes dough by first mixing it, moving it forward, then raising random amounts of dough by a loading paddle above the extruding chamber, whereupon the dough falls by gravity through the entrance opening into the extruding chamber to be moved forwardly to the die. Excess dough falls back into the mix below the chamber and is eventually loaded up again.
 
 
 3
 The invention of the '575 patent rotates the dough in the mixing shaft in a direction which mixes and moves the dough rearwardly. When the mixing is complete, the shaft rotation is reversed so that the dough is propelled forward toward the cross wall. The forwardly moving dough is conveyed to the extruding chamber by a "stuffer means" whose function is described in the patent specification as "reliably and uniformly pack[ing] the mixed dough" "to facilitate uniform entry of the packed dough into the extruding chamber without undesirable air pockets or lumpy accumulations of dough."
 
 
 4
 The dispute concerns the only independent claim in the '575 patent, claim 1. Specifically, the district court focused its infringement analysis on claim 1(e) of the '575 patent. Element (e) of claim 1 reads:
 
 
 5
 e) stuffer means mounted on the mixer shaft for joint rotation therewith, and operative for raising the mixed ingredients above said axis of rotation, and for feeding the raised ingredients in metered manner into the raised entry zone for subsequent passage to the extruding chamber.
 
 
 6
 When CTC filed the application for the '575 patent it submitted 111 United States and foreign translated patents in its prior art statement. CTC, however, discussed only one -- Italian Patent No. 451,958 (the Daino patent) -- which disclosed the drive means as originally claimed but not an electrical reversible motor. To avoid rejection based on Daino, CTC amended claim 1 to include the limitation that the motor was electric and reversible. The patent examiner rejected claim 1 on the basis that the claimed machine was an obvious combination of the disclosures of Daino and U.S. Patent No. 3,750,569 (the Hartley patent) because (a) Daino disclosed all of the elements of claim 1 with the exception of the reversible motor, (b) Hartley showed a reversible motor in a comparable food-mixing machine, and therefore (c) the combination was obvious under section 103.
 
 
 7
 CTC replaced the language of claim 1 with the current language, stressing in its comments that the mixer had a "stuffing means" for feeding the ingredients into the extruding chamber that was not disclosed in Daino, or any of the other nine patents cited by the examiner, and that this feeding arrangement of small "predetermined amounts" was patentably novel over all prior art. CTC stated that
 
 
 8
 [t]he stuffer means 162 raises the mixed ingredients above the horizontal axis of rotation, and feeds the raised ingredients in a metered manner into the raised entry zone for subsequent passage to the extruding chamber.... Essentially, this novel feeding arrangement assures a uniform feeding of the mixed ingredients by feeding small predetermined amounts of the entire mixture towards the extruder (JA 103-104) (emphasis added).
 
 
 9
 The examiner allowed the new claim 1, containing the stuffing means, and issued the patent.
 
 B. The Infomercials
 
 10
 Both CTC and Popeil sold their products through infomercials. The Popeil infomercial takes the form of an "Incredible Inventions TV Show" hosted by Nancy Nelson, featuring Ron Popeil. The "show" opens on the "home" kitchen set of the Incredible Inventions Show with Nelson who introduces Popeil. Popeil makes nine different kinds of pasta, tells the audience what they receive when they order, and interviews audience members. Then an announcer gives order information. The show continues with audience members making pasta, another segment on what you get and price, followed by the announcer again and Popeil narrating the closing.
 
 
 11
 CTC's infomercial (Pasta Fresca) involves two entrepreneurs from a pasta store who have now developed a home pasta maker and are appearing on their own pasta show. The Pasta Fresca show is primarily set in a retail pasta store with short segments in a supermarket and a restaurant. The show begins on the Pasta Fresca show where the host introduces the two young entrepreneurs who own a retail pasta store and have now created a home pasta maker. The show proceeds primarily at their pasta store, where they demonstrate their home pasta maker and tout its many benefits. They visit a supermarket to discuss other types of pasta and the benefits of fresh produce. There is an announcer that then gives order information. Back at the store, a registered dietician visits to tell about the health benefits. Then restaurant customers are interviewed, and the hosts make dessert pasta. Finally, the announcer comes on again, this time with ordering information, and the credits roll at the end of the infomercial.
 
 
 12
 Ron Popeil first used his "Incredible Inventions Show" format to sell his products in April 1991. The Popeil pasta maker infomercial first aired in April 1993. The CTC Pasta Fresca infomercial first aired in late 1992.
 
 C. District Court's Decision
 
 13
 In 1993, CTC accused Popeil of infringing its '575 patent. Popeil filed a declaratory judgment action contending that the '575 patent was invalid and not infringed. CTC counterclaimed for patent and copyright infringement, unfair competition, trade dress infringement and false advertising. Popeil moved for summary judgment of non-infringement (literal and under the doctrine of equivalents), and CTC filed a cross-motion for summary judgment of literal infringement.
 
 
 14
 Based on its reading of claim 1(e) as claiming a machine which feeds dough in a "metered manner," meaning in a predetermined and uniform manner, the district court found that there was no triable issue of fact as to whether the Popeil machine feeds dough in a "metered manner," and granted Popeil's summary judgment that the '575 patent was not infringed. On reconsideration, the district court also granted Popeil's motion for summary judgment that its machine did not infringe the '575 patent under the doctrine of equivalents because during the prosecution, CTC's statements explaining its amendment of claim 1(e) limited assertable equivalents to machines that fed dough in a metered manner -- meaning uniform feeding of a predetermined amount, and because there was no genuine issue of fact that Popeil's machine did not feed a predetermined amount of dough into the extruder. The district court also dismissed CTC's counterclaims, including CTC's copyright counterclaim. CTC appeals the court's decisions on patent and copyright infringement.
 
 DISCUSSION
 
 15
 Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence must be viewed in the light most favorable to the nonmoving party. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed. Cir. 1985) (in banc). Regardless of the nature of the issue determined favorably to the movant, we review the district court's grant of summary judgment de novo. International Visual Corp. v. Crown Metal Mfg. Co., Inc., 991 F.2d 768, 770, 26 USPQ2d 1588, 1590 (Fed. Cir. 1993).
 
 A. Literal Infringement
 
 16
 Determination of literal infringement requires a two-step analysis. First, the court must interpret the claims of the patent as a matter of law to determine their meaning and scope. Markman v. Westview Instruments, Inc., F.3d , , 34 USPQ2d 1321, 1329 (Fed. Cir. 1995) (in banc); Senmed, Inc. v. Richard-Allan Med. Indus., Inc., 888 F.2d 815, 818, 12 USPQ2d 1508, 1511 (Fed. Cir. 1989). Second, the trier of fact must determine whether the claims of the patent, as so construed, cover the accused device. Id. at 818, 12 USPQ2d at 1511. To establish literal infringement, every limitation set forth in a claim must be found in an accused product. Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 796, 17 USPQ2d 1097, 1099 (Fed. Cir. 1990). Infringement, both literal and under the doctrine of equivalents, is a question of fact. SSIH Equip. S.A. v. United States Int'l Trade Comm'n, 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed. Cir. 1983).
 
 
 17
 1. The district court correctly construed "metered manner" to require that the claimed invention must perform the feeding function using a predetermined amount of dough. Although the claim itself does not explicitly define "metered manner," the patentee successfully argued before the PTO that the "novel feeding arrangement" "assure[d] a uniform feeding of the mixed ingredients by feeding small predetermined amounts of the entire mixture towards the extruder," in order to overcome the examiner's rejection over the prior art. The patentee's use of the language "predetermined amounts" in describing the "novel" feeding arrangement which the patentee argued expressly distinguished the '575 patent from the prior art, precludes the patentee from now broadening the meaning of "metered manner" to cover all uniform feeding of dough. The declaration of its expert that the claim itself does not require "uniform packing" or "metered" amounts of dough cannot now change what it defined the term to mean. Therefore, in light of the patentee's explicit definition of the term during the prosecution as meaning both measured and uniform amounts, and the fact that the ordinary meaning of "metered" is either measured or uniform and that nothing in the claims or specification precludes this definition of "metered," the correct meaning of "metered manner" is both measured and uniform. Because Popeil's device undisputably drops random amounts of dough into the extrusion chamber, there is no genuine issue of fact, and, as the district court correctly concluded, Popeil is entitled to summary judgment of non-infringement.
 
 
 18
 2. Additionally, claim 1(e) requires a "stuffer means." CTC contends that stuffing only means "feeding," and that a machine which uses a loading paddle and scraper blade where the loading paddle raises the dough above the horizontal axis of rotation and drops the dough into the chamber, as does Popeil's pasta maker, still infringes the '575 patent because there is no language in claim 1(e) that limits dough from falling into the entry zone of the extruding chamber by gravity. Because claim 1 is expressed as a series of means plus function limitations, we are statutorily required to look to the specification to understand the structure claimed. 35 U.S.C. Sec. 112, p 6. The specification in referring to "stuffer means" speaks in terms of the "stuffing element" "uniformly pack[ing]" the mixed dough "to facilitate uniform entry of the packed dough into the extruding chamber without undesirable air pockets or lumpy accumulations of dough." Given the explicit references in the specification to "packing," "packed dough," and dough without undesirable air pockets or lumps, further indicating that the invention "packs" the dough, we cannot conclude that the term "stuffer means" merely teaches a means for feeding dough. Rather, we conclude that "stuff" in "stuffer means" has its ordinary meaning of "packing" or stuffing the dough through compression. Appropriate structures were also shown in the specification to perform the dough packing or compression.
 
 
 19
 Because it was undisputed that Popeil's pasta maker dropped the dough into the extrusion chamber and had no structure to pack or "stuff" the dough, Popeil's pasta maker could not infringe the '575 patent which requires that the machine stuff dough into the entry zone of the extrusion chamber using compression. Although the district court did not rely on CTC's failure to meet the "stuffer" limitation, the failure provides an additional basis for determining non-infringement as a matter of law.
 
 
 20
 B. Infringement Under the Doctrine of Equivalents
 
 
 21
 An accused product that does not literally infringe a claim may infringe under the doctrine of equivalents if "it performs substantially the same function in substantially the same way to obtain the same result." Graver Tank & Mfg. Co., Inc. v. Linde Air Prods. Co., 339 U.S. 605, 608, 85 USPQ 328, 330 (1950). Only if an accused product contains a specific structure which meets every limitation of an asserted claim directed to structure, at least equivalently, can that product infringe under the doctrine of equivalents. However, prosecution history estoppel limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent. Townsend Eng'g Co. v. HiTec Co., Ltd., 829 F.2d 1086, 1090, 4 USPQ2d 1136, 1139 (Fed. Cir. 1987). Although equivalence is a question of fact, the application of prosecution history estoppel raises a question of law which we review de novo. LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n, 867 F.2d 1572, 1576, 9 USPQ2d 1995, 1998 (Fed. Cir. 1989).
 
 
 22
 1. As an initial matter, we conclude that, because Popeil's pasta maker does not "stuff" the mixed dough into an extrusion chamber -- as we have defined that term -- and also is structurally incapable of performing the "stuffing" function, there is no genuine issue of fact to preclude summary judgment of non-infringement under the doctrine of equivalents. Further, although the district court did not rely on the complete absence of the function in the accused device or any structure to perform it, we hold that these facts provide an additional and sufficient basis for summary judgment of non-infringement on this record because Popeil's device cannot have an equivalent structure under 35 U.S.C. Sec. 112, p 6 where it has no such structure at all.
 
 
 23
 2. Second, we address CTC's argument on appeal that it should not have been estopped by its statements during the prosecution from construing the claim limitation "metered manner" as merely "uniform" in timing, not measured and uniform in amount.
 
 
 24
 CTC concedes that it filed an amendment adding the "metered manner" limitation to overcome prior art cited by the examiner, but argues that the amendment was not material to the examiner's decision to allow claim 1. However, the addition of a claim limitation for the purpose of overcoming prior art cited by the examiner is sufficient by itself to permit the inference that the added limitation was material to the examiner's allowance. The accused infringer does not need to show actual reliance by the examiner on certain amendments to a patent claim -- only that the circumstances were such as to permit the inference that such reliance in fact occurred. See Zenith Labs., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1424, 30 USPQ2d 1285, 1291 (Fed. Cir.), cert. denied, 115 S. Ct. 500 (1994).
 
 
 25
 In this case, the patentee's representations concerning the amended claim 1 were material to overcoming the prior art and the consequent issuance of the patent. The patentee expressly stated that "none of the applied references show[ed] the recited feeding arrangement" and defined the feeding arrangement as one that was both measured and uniform as to "small predetermined amounts." Moreover, the examiner did not allow the previous version of claim 1 which did not have the stuffing means function and its limitations, but did issue the patent as a result of the patentee's amendment and commentary explaining it. Thus, we must reject the patentee's argument of non-materiality of the amendment and statement.
 
 
 26
 In addition, CTC argues that even though the amendment and statement were material, they did not actually surrender that which CTC now seeks to apply against Popeil's device. As the district court explained, "[t]he legal standard [in prosecution history estoppel] for determining what subject matter was relinquished is an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude, from the prosecution history, that the applicant gave up to procure issuance of the patent." See also id. Because the patentee here expressly defined the feeding mechanism that it claimed as overcoming the prior art, the patentee cannot now disclaim part of its own definition of that mechanism, namely that the dough is measured in addition to being uniformly compressed through the chamber.
 
 
 27
 Therefore, because Popeil's pasta maker does not feed the dough in a uniform measured amount, and because the patentee cannot disclaim a limitation during litigation which it added during the prosecution, CTC is estopped from asserting that Popeil's device infringes the '575 patent under the doctrine of equivalents -- the asserted equivalent was implicitly excluded from the claim limitation by CTC's definition of the "metered manner" limitation as "measured" and "uniform" as to amount.
 
 C. Copyright Infringement
 
 28
 Because direct evidence of copying is not available in most cases, a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar. Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1163 (9th Cir. 1977). Here Popeil admitted access to the work, so only the issue of "substantial similarity" remained.
 
 
 29
 The Ninth Circuit, whose law we must apply, employs a two-part test first enunciated in Sid & Marty Krofft Television Prods. for determining whether one work is substantially similar to another. See id. The plaintiff must prove both substantial similarity of general ideas under the "extrinsic test" and substantial similarity of the protectable expression of those ideas under the "intrinsic test." Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990). Under the first test, the plaintiff must show that the two works are substantially similar as to the objective characteristics of, inter alia, theme, plot, sequence of events, characters, dialogue, setting, mood, and pace. Id. Summary judgment is appropriate if the district court can conclude that reasonable minds could not conclude that the two works were substantially similar under these objective criteria.[1] Id.
 
 
 30
 In this case we agree with the district court's analysis that there was no objective substantial similarity because any similarities in fact were so scattered or related to unprotected expression, such as discussions of the function of any pasta maker, that they were not "substantial" within the meaning of the Ninth Circuit case law. First, any similarity in theme does not extend beyond the idea level, and copyright does not cover ideas. Both infomercials promote the sale of home pasta makers and there are a limited number of reasons anyone would want to buy a home pasta maker -- pasta freshness, economy, variety, better taste, nutrition. To the extent that these themes stem from the idea of the pasta maker itself, the similarities are not protected. Additionally, the way the infomercials express the benefits and the relative emphasis they place on the benefits is different. Second, the plots of the two programs are different. Pasta Fresca features the two entrepreneurs in their own retail store, with key people dropping in to give testimonials. Popeil's show features him interacting with an audience. Third, the sequence of events in the two infomercials is different and they involve different events. Fourth, the only similar characters are a program host and an announcer. Yet many infomercials use this format/these characters. Further, the expression of the other characters is different -- for example, Popeil is a well-known inventor himself, while the Pasta Fresca entrepreneurs are unknown, and Pasta Fresca has restaurant guests while Popeil's show has a live audience. Fifth, the settings for the infomercials are entirely different. Sixth, although both are fast-paced, Popeil's is entirely in one setting, creating a less "choppy" pace. Finally, CTC does not contend that there were any similarities in dialogue beyond ordering information.
 
 
 31
 Because the district court, therefore, correctly concluded that reasonable minds could not conclude that the two works were substantially similar under these objective criteria, its grant of Popeil's motion for summary judgment on copyright non-infringement was appropriate.
 
 CONCLUSION
 
 32
 Because as a matter of law Popeil's pasta maker does not contain a "stuffer means," even equivalently, we conclude summary judgment for Popeil of non-infringement was appropriate. We also agree with the district court's construction of "metered manner" as requiring both "uniform" and "measured" amounts of dough and its conclusion that CTC was estopped from asserting an equivalent which only required a "uniform" rate of feeding dough into the extrusion chamber, thus precluding infringement by Popeil's pasta maker which dropped random, or unmeasured, amounts of dough into the extrusion chamber. We therefore affirm the district court's grant of summary judgment of non-infringement, literal and under the doctrine of equivalents. Additionally, because we agree with the district court that reasonable minds could not conclude that Popeil's infomercial was substantially similar to CTC's infomercial, we affirm its grant of summary judgment dismissing CTC's copyright counterclaim.
 
 
 
 [1]
 The subjective test involves a determination that the works had a substantially similar total concept and feel. Summary judgment is not appropriate for the second, subjective prong. Because the plaintiff must also satisfy the first, objective prong, however, the district court in this case never reached the second prong