LITTON SYSTEMS, INC.,
Plaintiff–Appellant,

v.

HONEYWELL, INC., Defendant–
Cross Appellant.

Nos. 95–1242, 95–1311.

United States Court of Appeals,
Federal Circuit.

June 18, 1998.

S. Leslie Misrock, Pennie & Edmonds, LLP, New York City, for plaintiff-appellant. With him on the brief were Rory J. Radding, New York City, Stanton T. Lawrence, III, and Paul J. Zegger, Washington, DC. Of counsel on the brief was Frederick A. Lorig, Bright & Lorig, Los Angeles, CA.

Gregory A. Long, Sheppard, Mullin, Richter, & Hampton, Los Ángeles, CA, for defendant-cross appellant. With him on the brief were Joseph F. Coyne, Jr. and Kent R. Raygor. Of counsel on the brief were Richard G. Taranto, Farr & Taranto, Washington, DC; William K. West, Jr., Pillsbury, Madison & Sutro, Washington, DC; and George E. Quillin, Foley & Lardner, Washington, DC. Of counsel were Richard E. Carlton and Joseph E. Neuhaus, Sullivan & Cromwell, New York City, and Laurence H. Pretty, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, CA.

*ORDER*

A combined petition for rehearing and suggestion for rehearing in banc having been filed by the Appellant, and a response therto having been invited by the court and filed by the Cross Appellant, and the petition for rehearing having been referred to the panel that heard the appeal and thereafter the suggestion for rehearing in banc and response having been referred to the circuit judges who are in regular active service, and a poll whether to rehear the appeal in banc having been requested, taken, and failed, it is

ORDERED that the petition for rehearing be, and the same hereby is, DENIED; and it is further

ORDERED that the suggestion for rehearing in banc be, and the same hereby is, DECLINED.

Circuit Judges Plager, Clevenger, and Gajarsa dissent in separate opinions.

Circuit Judge Newman has filed a separate opinion with views on the suggestion for rehearing in banc.

The mandate of the court will issue on June 25, 1998.

PLAGER, Circuit Judge, dissenting from the Order declining the suggestion for rehearing in banc.

There is perhaps no question more important to the health of patents than the scope and application of the judicially-created doctrine of equivalents. It permeates the entire fabric of patent law, and appears in virtually every case involving patent enforcement. A candid appraisal of our jurisprudence in this area suggests that there is room for improvement. The Supreme Court's latest contribution, *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), helps, but still leaves some questions unanswered.

It is not clear to me exactly what the Supreme Court had in mind when it said that, as a result of an amendment related to patentability, "prosecution history estoppel would bar the application of the doctrine [of] equivalents as to that element." *Id.* at 1051. Perhaps the Court had no intention of changing our existing practice; that is the position of the panel opinion in this case, which, as I understand it, essentially attributes no special significance to the Supreme Court's statement, and to its general explication of the doctrine of equivalents. The panel applies this court's pre-existing mode of analysis to determine when and to what extent prosecution history estoppel operates.

Or perhaps the Court intends for us to rein in the doctrine still further and strictly limit the range of equivalents available, as sug-

gested by Judge Gajarsa in his dissent from our failure to accept this case for rehearing in banc. He views that failure as a "missed occasion to square our view of the doctrine of equivalents with the view ... [of] the Supreme Court." Judge Clevenger also dissents, and believes that the Supreme Court needs to tell us exactly what it meant, or that it meant what it seems to have said.

In any event, the Supreme Court in its *Warner–Jenkinson* opinion charged the Federal Circuit with the responsibility to "refine the formulation of the test for equivalence in the orderly course of case-by-case determinations," and left that refinement to this court's "sound judgment in this area of its special expertise." *Id.* at 1054. As a court, we have the responsibility to carefully choose and develop the cases that will define the doctrine of equivalents in the years ahead. It may be that the case before us—it is rather convoluted and the technology is obscure to the uninitiated—is not the best one in which to address the issue of prosecution history estoppel. This court's decision not to rehear the case in banc does not mean that the issue will go away. Indeed, whether our failure to do so will prove to be a missed opportunity, or simply an example of a fruit not yet ripe to pluck, remains to be seen.

CLEVENGER, Circuit Judge, dissenting from the Order declining the suggestion for rehearing in banc.

As Judge Gajarsa demonstrates in his opinion, explicit language in the Supreme Court's *Warner–Jenkinson* opinion states that when a limitation in a claim is amended for patentability reasons (or is presumed to be amended for that reason in the absence of another explanation) the doctrine of equivalents is not available for assertion with respect to the amended limitation. Indeed, the Supreme Court's words "bar the application of the doctrine of equivalents" to the amended limitation.

The long-standing law of prosecution history estoppel holds that when a limitation in a claim is amended for patentability reasons, the doctrine of equivalents *is* available for assertion with respect to the amended limitation, but that the patentee may not assert as an equivalent to the amended limitation any matter surrendered in order to overcome the threat to patentability presented by the originally claimed limitation. Thus, under the pre-*Warner–Jenkinson* law of prosecution history estoppel, a patentee potentially could assert a range of equivalents to a claim amended for reasons of patentability.

In this case, the panel decision holds that the Supreme Court in *Warner–Jenkinson* did not mean to alter the range of equivalents available to a patentee under the doctrine of equivalents, notwithstanding the explicit language in the Supreme Court's opinion stating that *no equivalents* are available to a claim limitation amended for reasons of patentability.

Whether to read the Supreme Court's opinion at face value, or whether to discount its explicit language as unintended, unclear, uninformed, unfathomable, or whatever, seems to me a matter of considerable importance, so much so that the matter satisfies the test for issues that should be decided by an in banc court.

Although we let a panel decide whether the Supreme Court sought to narrow the reach of the doctrine of equivalents, or whether it instead sought to leave the doctrine "as is" (the latter being the panel decision in this case), hopefully the Supreme Court will have an occasion to decide whether our panel got it right. Someone, in this case or in another case soon, should explain to the Supreme Court that—if this panel is correct in granting a range of equivalents to limitations of claims amended for patentability reasons—its *Warner–Jenkinson* decision had no meaningful effect at all on the doctrine of equivalents. This is so because the so-called "all elements" rule described by the Supreme Court has been around for a long time, deeply embedded in Federal Circuit jurisprudence, and the presumption that claims are amended for patentability reasons unless proven to the contrary adds not much to the law, since claims are rarely amended for reasons other than patentability. The new, and significant, narrowing of the doctrine of equivalents that shows on the face of the Supreme Court's opinion is the point that the panel decision in this case rejects: that

limitations in claims amended for patentability reasons lose, entirely, the benefits of the doctrine of equivalents.

GAJARSA, Circuit Judge, dissenting from the Order declining the suggestion for rehearing in banc.

## INTRODUCTION

Because the doctrine of equivalents "has taken on a life of its own, unbounded by the patent claims," the Supreme Court severely curtailed the reach of the doctrine in its recent decision in *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The curtailment is precise and explicitly defined in the Court's opinion, as I will demonstrate below, and we are obligated to give effect to the restrictions the Supreme Court has placed on the doctrine. The panel opinion in this case, however, did not heed these instructions and has left the doctrine of equivalents virtually intact, notwithstanding the unmistakable intent of the Court to narrow the reach of the doctrine of equivalents. I am thus compelled to dissent from this missed occasion to square our view of the doctrine of equivalents with the view so recently stated with such force, clarity and precision by the Supreme Court. This court must follow, not ignore, the new framework set forth by the Supreme Court as it limited the doctrine of equivalents.

Patents provide inventors with a legal right, for a limited time, to exclude others from using, selling, offering to sell, or manufacturing the invention. In essence, patents give their owners significant power over the development of technology and markets by giving patentees the right to exclude others from using their inventions. For this privilege, the government extracts a public disclosure of the invention in the hope that, among other things, the disclosure of all inventions will add to the sum total of knowledge available to the general public. Competitors and the markets, as well as the courts, must be able to ascertain what subject matter is covered by this right to exclude. Public notice of the scope of the right to exclude, as provided by the patent claims, specification and prosecution history, is a critical function of the entire scheme of patent law. The notice function is critical because it provides competitors with the necessary information upon which they can rely to shape their behavior in the marketplace.

The Supreme Court has recently stated that "[t]here can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Id.* at 1049. In *Warner–Jenkinson*, the Supreme Court has also provided useful guidelines that can be used by the public to better decipher the real meaning and scope of patents. Now that the Supreme Court has "clarif[ied] the proper scope of the doctrine," we fail in our responsibility if we do not follow the Supreme Court's precise instruction to restrain the doctrine of equivalents. *Id.* at 1045.

## THE SUPREME COURT'S DECISION IN *WARNER–JENKINSON*

In *Warner–Jenkinson*, the Supreme Court announced a new framework expanding the preclusive effect of prosecution history estoppel. The context of the *Warner–Jenkinson* opinion must be considered as we interpret the Supreme Court's mandate. The Supreme Court specifically disagreed with the petitioner's argument that, regardless of the reason the amendment was made, prosecution history estoppel barred all equivalents to an amended claim element. *See Warner–Jenkinson*, 117 S.Ct. at 1049–50. Instead, the Supreme Court differentiated between amendments that were made for patentability reasons, and those that were not. *See id.* The Supreme Court was clear that "[w]here the reason for the change was not related to avoiding the prior art, the change may introduce a new element, but it does not necessarily preclude infringement by equivalents of that element." *Id.* at 1050–51. Thus, the Supreme Court did not change the availability of the doctrine of equivalents where amendments were made for reasons clearly *not* related to patentability. Rather, the Supreme Court focused its attention on *additional* limitations to the doctrine of equivalents where amendments were

made for unknown reasons as well as reasons related to patentability.

In addressing the fact situation presented in *Warner–Jenkinson*, in which "a pH from approximately 6.0 to 9.0" was added to the claim, 117 S.Ct. at 1050, the Supreme Court noted that it was undisputed that the upper limit of 9.0 was added for patentability reasons, while the reason for adding the lower limit of 6.0 was unclear. The Supreme Court stated that, because it was unclear whether the limit of 6.0 was added for patentability reasons, its mere inclusion "did not *necessarily preclude* the application of the doctrine of equivalents as to that element." *Id.* (emphasis added). This statement implies that, while the lower limit of 6.0 was not necessarily precluded from being infringed by equivalents, the upper limit of 9.0 could not be infringed by equivalents.

The Supreme Court next stated that it was "left with the problem, however, of what to do in a case like the one at bar, where the record seems not to reveal the reason for [amending the claim]." *Warner–Jenkinson,* 117 S.Ct. at 1051. The Supreme Court then resolved this issue by placing "the burden on the patent-holder to establish the reason for the amendment required during patent prosecution. The court then would decide whether that reason is sufficient to overcome prosecution history estoppel *as a bar to application of the doctrine of equivalents to the element added by that amendment.*" *Id.* (emphasis added). The language is clear. If the reason is insufficient to establish that the amendment was made for a reason not related to patentability, application of the doctrine of equivalents as to the amended element is *barred* by prosecution history estoppel. In these circumstances, there is *no* application of the doctrine of equivalents to the element amended.

The Supreme Court further explained that where no reason was established for the amendment, prosecution history estoppel is applied as if there were a patentability reason for the change, thereby barring all application of the doctrine of equivalents as to that element. "Where no explanation is established, however, the court should presume that the PTO had a substantial reason related to patentability for including the limiting element added by amendment. *In those circumstances, prosecution history estoppel would bar the application of the doctrine [of] equivalents as to that element.*" *Id.* (emphasis added). This statement of the law is clear and is not open to multiple interpretations. The first sentence of the above quotation explains that when an amendment is made for an unknown reason, the amendment is to be treated as if it were made for a reason related to patentability. The Supreme Court has therefore unequivocally equated amendments made for unknown reasons with amendments made for patentability reasons. For all intents and purposes, they are the same. In the next sentence, the Supreme Court states that prosecution history estoppel *bars* application of doctrine of equivalents to those very same amendments which it has just said are to be treated as amendments related to patentability. Thus, the logic proceeds as follows: amendments made for unknown reasons are to be presumed to be amendments made for reasons related to patentability; prosecution history estoppel *bars* the application of the doctrine of equivalents to amendments made for unknown reasons; therefore, prosecution history estoppel also bars application of the doctrine of equivalents in cases where the amendment was made for reasons related to patentability.

The Supreme Court has explicitly linked those amendments made for unknown reasons to those made for patentability reasons. *See Warner–Jenkinson,* 117 S.Ct. at 1051. There can only be one purpose to this link—these two situations are to be treated similarly. If the Supreme Court had intended merely to bar the application of the doctrine of equivalents to amendments made for unknown reasons, this explicit link would have absolutely no purpose in the context of the opinion. Had the Supreme Court intended to bar the application of the doctrine of equivalents only to those amendments made for unknown reasons, it would have merely stated that "where no explanation is established, prosecution history estoppel would bar the application of the doctrine of equivalents as to that element." The link would be

superfluous. It defies logic to read *Warner–Jenkinson* to hold that an amendment that is known to have been made for patentability reasons is to be treated differently than an amendment that is *presumed* to have been made for patentability reasons.

I therefore believe the plain meaning of the Supreme Court's decision in *Warner–Jenkinson* to be: if a claim is amended during prosecution, the patentee has the burden of showing why the change was made. If the change was made for reasons of patentability or if the reasons are unknown, then prosecution history estoppel completely bars the application of the doctrine of equivalents as to that amended element. If, however, the patentee can show the element was amended for a reason not related to patentability, then prosecution history estoppel does not bar the application of the doctrine of equivalents as to that amended element.

## THE LITTON OPINION

The *Litton* panel implies that the Supreme Court did not mean what it said. *Litton* holds that the Supreme Court did not bar the application of the doctrine of equivalents to claim elements amended for patentability reasons. The majority interprets the *Warner–Jenkinson* opinion as holding that estoppel only bars recapture of that subject matter actually surrendered during prosecution and therefore amendments to overcome prior art do not result in a complete surrender of all subject matter beyond the literal scope of the amended claim. The *Litton* panel ultimately states that the Supreme Court only "articulated an additional rule to trigger, in applicable circumstances, prosecution history estoppel. But that is all the Supreme Court articulated ... the Court did not change the scope or effect of the estoppel." *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 46 U.S.P.Q.2d 1321, 1326 (Fed.Cir.1998). In light of the explicit language used by the Supreme Court, this simply cannot be true.

The majority seeks to evade the clear holding of the Supreme Court through a tortured interpretation of the *Warner–Jenkinson* opinion.[1] The *Litton* panel argues that the quotations from the Supreme Court cited above read in context do not completely preclude application of prosecution history estoppel to the doctrine of equivalents with regard to an amendment made for reasons related to patentability. In a convoluted attempt to avoid the literal language of the Supreme Court's holding, the *Litton* panel cites to footnotes 6 and 7 in *Warner–Jenkinson* to show that the Supreme Court did not mean what it said in the text of its opinion. *Id.* To begin with, it seems to be a peculiar method of legal analysis to use the footnotes to overcome the clear language of the text of an opinion. In addition, even if we assume these footnotes do contradict the text—how do we know whether the Supreme Court really meant what it said in the text or in the footnotes? Isn't the more appropriate analy-

1. For example, the panel opinion states that "the entire context of the *Warner–Jenkinson* opinion shows that the Supreme Court approved [of] the PTO's practice of requesting amendments with the understanding that the doctrine of equivalents would still apply to the amended language." *Litton*, 140 F.3d 1449, 46 U.S.P.Q.2d at 1326. There is no evidence that such a practice exists. In deciding whether to allow a patent application to issue, an examiner does not consider the doctrine of equivalents. The United States Patent and Trademark Office (PTO) requires its examiners to determine only whether a patent application meets the statutory requirements of Title 35 of the United States Code as well as various internal regulations. As a judicially-created doctrine, the doctrine of equivalents is not found anywhere in either Title 35 of the United States Code or in the Code of Federal Regulations governing PTO practice. As such, an examiner is in no way required or directed to consider the application of the doctrine of equiv- alents in determining whether to allow a particular patent application. Although the Manual of Patent Examining Procedure section 904.01(b) states that all subject matter that is the patentable equivalent of the subject matter defined in the claim is to be considered by the examiner, this section references sections 2181–84, which specifically refer to equivalents in the context of means-plus-function claims. Section 2186 similarly refers to the need for examiners to consider decisions involving the doctrine of equivalents, but only as they relate to determining equivalents in the context of examining claims written in means-plus-function form under 35 U.S.C. § 112, ¶ 6. There is no official directive from the PTO, nor any common practice among patent examiners, of considering during prosecution equivalents of claim limitations which are not written in means-plus-function form. The doctrine of equivalents is therefore not "assumed" by patent examiners in allowing claims as is suggested in the *Litton* opinion.

sis to give weight to the clear textual provisions?

Moreover, these footnotes do not even contradict the clear meaning of the text. The footnotes do not relate to the relevant textual provisions of the opinion, but rather modify other parts of the opinion. The *Litton* panel argues that in footnote 6, the Supreme Court refuses to "change the rules of the game." *Id.* However, while the *Litton* panel's citation is correct, the conclusion it draws from the footnote is faulty. In footnote 6, the Supreme Court refuses to change the rules of the game only with respect to the petitioner's proposed any-type-of-amendment, no-equivalents rule. *See Warner–Jenkinson,* 117 S.Ct. at 1050. This does not in any way modify the clear reasoning in an entirely different section of the text, which discusses amendments made for reasons related to patentability.

Similarly, as the *Litton* panel recognizes, footnote 7 does not address the issue of when the doctrine can be applied in light of an amendment related to patentability. *Litton,* 140 F.3d 1449, 46 U.S.P.Q.2d at 1326. Footnote 7 explains only how the estoppel is to be applied when an amendment is *not* related to patentability. Again, no conclusion as to the application of prosecution history estoppel to amendments made for reasons related to patentability can be drawn from this footnote. *See Warner–Jenkinson,* 117 S.Ct. at 1050.

The *Litton* panel further states that the caselaw from the Supreme Court and Federal Circuit regarding the scope of prosecution history estoppel contradicts Honeywell's reading of "a single isolated sentence" in the *Warner–Jenkinson* opinion. *Litton,* 140 F.3d 1449, 46 U.S.P.Q.2d at 1326. The Supreme Court is not required to reiterate its statements several times for them to carry weight with the lower courts. Moreover, this was not a single isolated sentence, or random "fluke" of a statement. The Supreme Court devoted an entire paragraph to its reasoning barring the application of the doctrine of equivalents to claim language amended for reasons related to patentability. In addition, the Supreme Court repeats this statement twice: "The court then would decide whether that reason is sufficient to overcome prosecu-

tion history estoppel as a bar to application of the doctrine of equivalents to the element added by that amendment.... In those circumstances [the amendment is presumed to have been made for reasons related to patentability], prosecution history estoppel would bar the application of the doctrine [of] equivalents as to that element." *Warner–Jenkinson,* 117 S.Ct. at 1051. Moreover, the Supreme Court specifically referred to this portion of its opinion when it said "[s]o long as the doctrine of equivalents does not encroach beyond ... limits to be discussed infra. at 1051–1052, 1053, n. 8, and 1054–1055, we are confident that the doctrine will not vitiate the central functions of the patent claims themselves." *Id.* at 1049 (emphasis added). Pages 1051 and 1052 are the very pages that contain the language barring the application of doctrine of equivalents to claim language amended for reasons related to patentability. Thus, it is evident that this explicit limitation in the Supreme Court's opinion was not some kind of inadvertent error, but rather an essential part of the Supreme Court's plan to limit the doctrine of equivalents. We need to be clear in interpreting the Supreme Court's language and we must be consistent in our approach.

The *Litton* panel also cites to two Supreme Court cases to support its reading of *Warner–Jenkinson.* The *Litton* panel cites *Keystone Driller Co. v. Northwest Engineering Corp.,* 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747 (1935) and *Smith v. Magic City Kennel Club, Inc.,* 282 U.S. 784, 51 S.Ct. 291, 75 L.Ed. 707 (1931) for the proposition that the Supreme Court has acknowledged the concept that an estoppel has an appropriate scope. The best that can be said of these cases is they hold that, where an amendment has been made for patentability reasons, the patentee is estopped from recapturing through the doctrine of equivalents the originally claimed element. *See Keystone Driller,* 294 U.S. at 48, 55 S.Ct. 262; *Smith,* 51 S.Ct. at 293–94. These cases did not present to the Supreme Court the situation in which a patentee attempts to recapture matter that was not expressly disclaimed by amendment. Consequently these cases cannot be cited to support the proposition that the Supreme Court

has already recognized that an estoppel is anything less than a complete bar to application of the doctrine of equivalents.

In *Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126, ¡2 S.Ct. 513, 86 L.Ed. 736 (1942), the Supreme Court was presented with a situation in which the claim at issue was amended from a broader scope to a narrower one. *Id.* at 132–33, 62 S.Ct. 513. The patentee asserted the doctrine of equivalents to cover devices that fell somewhere within the scope of the broader claim, but not within the narrower, amended claim. The Supreme Court stated that "[b]y the amendment he recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference." *Id.* at 136, 62 S.Ct. 513. Thus, the Supreme Court was clear that the surrender was complete and covers all structures between the precise matter surrendered and the structure literally claimed after amendment. In other words, all asserted equivalents as to the amended element had been abandoned during prosecution.

The *Litton* panel finally argues that the Supreme Court did not reach the scope of an estoppel in cases where the patent claims have been amended for reasons of patentability because the Supreme Court remanded for fact finding on application of the presumption. *See Litton*, 140 F.3d 1449, 46 U.S.P.Q.2d at 1327. While correct, this does not support the panel's conclusion that *Warner–Jenkinson* did not change the scope of subject matter precluded by an estoppel. Rather, the Supreme Court remanded for determination of the reason for the addition of the lower pH limit. This was done in order to determine whether the newly articulated *Warner–Jenkinson* presumption has been sufficiently rebutted to justify a finding that the amendment was not made for reasons of patentability and thus is entitled to some range of equivalents despite the amendment. Thus, the Supreme Court's decision to remand does not affect its decision regarding the preclusive effect of an amendment made for reasons related to patentability.

We require practitioners who appear before this court to apply rigorous logic and consistency in their advocacy; we should require no less of ourselves whenever we are providing directions to the bar. We should not allow ourselves the belief that we can interpret a Supreme Court opinion and, by metaphysical metamorphosis, transform its position to one which we prefer.[2]

For the above-stated reasons, I believe the *Litton* panel misreads the clear instructions of *Warner–Jenkinson*. Given the serious ramifications of the *Litton* panel's views on the application and scope of the doctrine of equivalents in light of the clear instruction from the Supreme Court to the contrary, I believe that this case warranted in banc review.

PAULINE NEWMAN, Circuit Judge, views on the suggestion for rehearing in banc.

I write separately to point out that the decision of the court not to re-decide this case in banc does not bode the ominous portents suggested by my colleagues in dissent. Whether the panel has correctly implemented the modified rules of equivalency, as applied to the facts of this case, is of course of concern to all of us. Undoubtedly there will be continuing occasion to refine this complex area of law, in fulfillment of the process with which the Supreme Court has charged the Federal Circuit. However, although it is now apparent that there is more than one view of what was decided in *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865 (1997), I can not find in this court's remand opinion the accused "discount [of the Supreme Court's] explicit language as unintended, unclear, uninformed, unfathomable, or whatever."

The panel conscientiously implemented the Court's new inquiry into whether an amendment was made for purposes of patentability, and found that an amendment made by Lit-

---

**2.** It is interesting to note that Judge Newman's views expressed in this denial of the in banc hearing, continue the metamorphosis where a *threatened* 35 U.S.C. 112 rejection in the *Litton* patent prosecution history becomes *in fact* a 35 U.S.C. 112 amendment in the *Litton* opinion.

ton under 35 U.S.C. § 112 was indeed made for purposes of patentability. The panel pointed out that equivalency is to be evaluated at the time of infringement—another important clarification by the Court, applicable to the facts of record in *Litton*—as is the Court's resolution of whether the equitable issue of intent should be considered. The Court's continued acceptance of equivalency as a question of fact for the jury is also pertinent to the remand. Although the panel had no need to consider the "all-elements rule" as applied to the claims at issue, the Court's endorsement of that rule is also of significant effect.

Thus I am perplexed by the view of a colleague in dissent that the Court's opinion in *Warner–Jenkinson* would have "no meaningful effect on the doctrine of equivalents" unless the opinion is read as does the dissenter. In *Warner–Jenkinson* the Court expressed particular concern for the notice function of patent claims, as a guide to the Federal Circuit as we continue to develop rules for the newly circumscribed doctrine of equivalents. But the Court did not hold that whenever a claim is amended for reasons of patentability, recourse to equivalency is barred absolutely. The Court did not overrule—and was not asked to overrule—our voluminous precedent wherein the scope of prosecution history estoppel is determined as the facts warrant. *E.g., LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 867 F.2d 1572, 1576, 9 U.S.P.Q.2d 1995, 1999 (Fed.Cir.1989) ("The effect may or may not be fatal to application of a range of equivalents broad enough to encompass a particular accused product. It is not fatal to application of the doctrine itself.") Although the Federal Circuit has not been generous in its view of equivalency, it, like the Supreme Court, has recognized that the doctrine is an integral part of an effective patent system. The Court in *Warner–Jenkinson* did not change that view, and did not act to effect the drastic limitation of the doctrine of equivalents that is postulated by dissenters.

Every patent practitioner knows how rare it is to conclude patent examination with claims that have not undergone amendment during prosecution, based on the examiner's rejections on grounds of patentability. It is routine for claims to be rewritten several times during the give-and-take of the examination procedure. The practitioner knows, of course, about prosecution history estoppel. However, the practitioner understands that estoppel will be based on what was actually yielded, not that equivalency will be totally barred whenever any claim limitation is amended.

The interpretation of my respected colleagues in dissent can not be reconciled with the Court's statements, upon considering the views of the United States and other amici, that the doctrine of equivalents serves a useful purpose. It is unlikely that the Court, while stressing that it is preserving the doctrine of equivalents in the interest of justice, made an arcane ruling that would eliminate access to the doctrine of equivalents in almost every case. Whether to bar all equivalency to any claim limitation amended for reasons of patentability was not at issue in *Warner–Jenkinson.* Such a far-reaching ruling as the dissenters postulate can not have been reached by indirection, yet missed by the many commentators on the *Warner–Jenkinson* opinion. The historic custom and culture of patent soliciting, wherein applicants present claims of varying scope and then work out the coverage in interaction with the examiner, would be affected, along with the scope of countless patents prosecuted and issued under those customs. This can not be the "face value" of the Court's holding. *See Warner–Jenkinson,* 520 U.S. 17, 117 S.Ct. at 1050 n. 6, 41 U.S.P.Q.2d at 1872 n. 6 ("To change so substantially the rules of the game now could very well subvert the various balances the PTO sought to strike when issuing the numerous patents which have not yet expired and which would be affected by our decision"); *id.* at n. 7 ("We do not suggest that, where a change is made to overcome an objection based on the prior art, a court is free to review the correctness of that objection.... What *is* permissible for a court to explore is the reason (right or wrong) for the objection and the manner in which the amendment addressed and avoided the objection.")

The petitioner in *Warner–Jenkinson* was directly concerned with the issue of whether the Hilton–Davis patent's claims were amended for reasons other than patentability, for infringement turned on the question of equivalency of the pH limit of 6.0. Although my colleague in dissent states that the Court's new presumption (about whether an amendment was made for purposes of patentability) "adds not much to the law," it was of critical importance to these litigants. It is unwarranted to trivialize the Court's reasoning on the dispositive issue in *Warner–Jenkinson,* in order to promote the argument that the Court intended to massively enlarge the restrictions on equivalency by placing an automatic and complete estoppel on every claim aspect for which the applicant argued patentability. Such a change in the law of the Court and this circuit requires exploration, not indirection.

Undoubtedly the rules of equivalency will receive continuing and careful refinement, as experience accumulates of the practical needs and policy concerns that are served by this doctrine. This court's action in the case at bar is in the direction of this evolution.